PHILLIPS PETROLEUM CO., v. DAVIS et al., Adm'rs.

No. 29630. June 16, 1942.

Rehearing Denied April 4, 1944.

*147 P. 2d 135.*

Don Emery and Rayburn L. Foster, both of Bartlesville, R. B. F. Hummer and E. G. De Parade, both of Oklahoma City, George Sneed, Jr., of Bartlesville, and Harry D. Turner, of Oklahoma City, for plaintiff in error.

Twyford & Smith and William J. Crowe, all of Oklahoma City, for defendants in error.

RILEY, J. This is an appeal from a judgment against plaintiff in error and in favor of defendant in error J. C. Davis in a proceeding in accounting for oil and gas produced by Phillips Petroleum Company from a well drilled in block 3, Aungst addition to Oklahoma City.

The well was drilled under a permit granted by the board of adjustment under the provisions of what is known as the zoning ordinance. For convenience plaintiff in error will hereinafter be referred to as Phillips, and defendant in error J. C. Davis will be referred to as Davis. Phillips procured the permit to drill the well and in its application stated that it was the owner of valid subsisting community oil and gas leases covering all the lots in said block except lots 1 to 4, inclusive, and lots 22 to 25, inclusive. The lots claimed by Davis are lots 1 and 2 in said block. Along with other information required by the ordinance was a certificate from a bonded abstracter certifying the name of the last record owner and the character of instrument or conveyance upon which the ownership rests. With reference to lots 1 and 2, the certificate showed as owner: "E. M. Bissell (Deed) Louis J. Rusche (Deed) title based on tax deed issued to him 9-5-21." As to lots 3 and 4 it showed as owner, "Louis J. Rusche (Deed)." At another place where the names and last-known addresses of lot owners in the block were given, it was stated as to lots "1 and 2 owner E. M. Bissell, whereabouts unknown," and a notation "serve notice by publication." Immediately thereunder it showed as to the same lots "1 and 2 Louis J. Rusche and Minnie Rusche, Harrah, Oklahoma." As to lots 3 and 4 the statement showed that Louis J. Rusche, Harrah, Okla., was the owner. Though the application stated that Phillips had no lease covering lots 1 to 4, inclusive, it later developed that it did in fact have assigned to it an oil and gas lease covering said lots 1 to 4, inclusive, executed by Louis J. Rusche and Minnie Rusche.

The ordinance provides that the board of adjustment:

". . . shall have authority and shall make any requirements, regulations or orders which may be necessary, proper or equitable for all persons interested therein, and shall protect and safeguard the rights of all parties affected by such order."

And:

". . . The board of adjustment, after giving notice and conducting hearing as hereinafter provided, shall have authority to determine the equities and grant a proper permit for drilling a well upon such block or tract."

The order granting the permit contained the following provisions:

"It is the judgment of the board, and the board so finds, that each owner of lots or parcels of land in said block 3, should be entitled to share in the one-eighth (⅛) of the oil, gas and/or casinghead gas that may be produced from the well to be drilled on said block 3 in the proportion that the area of such lots and parcels of land, exclusive of streets and alleys, bears to the entire area of said block 3, exclusive of streets and alleys; . . ."

And:

"It is further ordered, adjudged and decreed that any owner of any valid and subsisting oil and gas lease covering any lots or parcels of land within said Block 3 not leased to appellant herein, and/or any owner of any unleased lots or par-

cels of land within said Block 3, shall have the right to participate in and receive his, or their proportionate part of the seven-eighths (7/8) working interest oil, gas and/or casinghead gas produced from said Block 3 in the proportion that the area of such lots or parcels of land, exclusive of streets and alleys, bears to the entire area of said Block 3, exclusive of streets and alleys, upon compliance of such owner with the following conditions:

"Within ten days (10) after the issuance of permit as provided herein, the appellant shall serve written notice, either by registered mail to the last known addresses, or by personal service upon all such lease owners, or owners of unleased lots or tracts, that appellant intends to drill, or is drilling, a well upon said Block Three (3), and each such owner shall have ten (10) days from the date of service of such notice to furnish a bond signed by some surety company, authorized to do business in the State of Oklahoma, running in the name of the appellant herein, executed by such owner as principal and conditioned that such owner will pay as rendered, all proper bills for his proportionate part of all costs and expenditures in the preparing for drilling, drilling, equipping, operating and maintaining said well and appurtenances thereto, and that such owner shall be liable for his proportionate part of all damages as the result of drilling, operation or maintenance of said well and said bond shall at all times be maintained and kept in full force and effect during the drilling of said well and shall be in the sum of One Dollar ($1.00) per square foot of the area of the lease, or unleased lots or tracts owned by such owner. If such owner of such lease, or unleased lots or tracts shall not furnish said bond to appellant herein within ten (10) days after service of said notice, then and in said event said owner or owners shall have no further right hereunder to receive or participate in the seven-eighths (7/8) production from said well. No owner whose interest does not appear of record, or of whose interest appellant shall have no notice at the time of the giving of notice by appellant as hereinabove provided, shall be entitled to share in any part of the seven-eighths (7/8) production from said well."

The matter in controversy here is the right of Davis, as present owner of lots 1 and 2, to participate in the proceeds of the oil and gas produced from the well drilled under said permit. The facts giving rise to the controversy are somewhat complicated, but in brief are:

In 1910, E. M. Bissell became the record owner of said lots 1 and 2, by deed. He failed to pay the taxes thereon after 1917, and a tax deed for said lots was issued by the county treasurer to Louis J. Rusche and Minnie Rusche in 1921.

On February 12, 1930, the Rusches executed an oil and gas lease covering said lots 1 and 2, along with lots 3 and 4, to Mid-Texas Petroleum Company. That company, on March 10, 1930, assigned said lease to Phillips. April 22, 1931, Phillips made its application for permit to drill a well on said block. The permit was granted with the provisions above noted.

A well was commenced on lots 27 and 28 in said block, and was drilled to the producing formation about September, 1931. After two months' test it was demonstrated that the well would be highly profitable.

In January thereafter a suit was commenced in the district court of Oklahoma county in the name of E. M. Bissell wherein he asserted that he was the owner of lots 1 and 2, and wherein he sought cancellation of the tax deed to the Rusches. Phillips et al. were made parties defendant. Bissell alleged that he was in possession, but further alleged that some of the defendants claimed some sort of possession. The prayer was that title be quieted in Bissell and if it be found that any of the defendants were in possession, they be ejected.

Issues were joined in that action and trial was had before Honorable T. G. Chambers, then district judge, on or about March 8, 1933.

On March 9, 1933, there was noted on the docket the following entry:

"March 9, 1933. Ent. Case comes on for further hearing. Judgment for plaintiff against all defendants quieting title. All as per J. E. Defendants except.

"(Chambers.)"

Separate motions for new trial were filed by the Rusches and by Phillips.

Shortly thereafter Judge Chambers died while the motion was pending. Honorable G. E. Henshaw was appointed as his successor, but did not pass upon the motions for new trial. On February 2, 1935, after Honorable Geo. H. Giddings, Jr., became successor to Henshaw, the Rusche motion for new trial was presented to Judge Giddings, who on February 28, 1935, entered the following order:

"It is therefore considered, ordered, adjudged and decreed by the court that motion for new trial is well taken, and same is hereby sustained and a new trial granted, and the judgment heretofore rendered, pronounced and entered by the Hon. T. G. Chambers, Judge, as authorized by law is hereby vacated, set aside and a new trial in all things is hereby granted in said cause, to which judgment and pronouncement the plaintiff excepts and exceptions are allowed by the court."

On April 2, 1935, there was filed by Twyford & Smith, through Solon W. Smith as amicus curiae, a suggestion of the death of plaintiff, E. M. Bissell, as of about November 28, 1933. But prior thereto, on March 29, 1933, after their motion for new trial had been granted, the Rusches filed a supplemental answer wherein they alleged the death of E. M. Bissell as of November 28, 1933, and that knowledge thereof had first come to them about March 24, 1935, but was known to his son and other heirs at the time of his death, and that as there had been no revivor, it was prayed that the cause be dismissed.

The suggestion filed by Twyford & Smith also stated that since the death of E. M. Bissell had occurred more than one year and no steps to revive had been taken, and for that reason the judgment of March 9, 1933, became final, and that

the court was without jurisdiction when it entered its order of February 28, 1935, vacating said judgment and granting a new trial.

On July 2, 1935, the Rusches filed further pleadings, one of which was a motion to abate and dismiss upon the grounds that although E. M. Bissell had alleged in his petition that he was the owner of and in possession of said lots, he had in fact conveyed them to one A. Bissell on November 5, 1931, as evidenced by a deed filed for record on March 15, 1933, and that on November 7, 1931, A. Bissell had by quitclaim deed conveyed said lots to J. C. Davis, so that E. M. Bissell had no right, title, or interest in said lots when he filed the action, and was not the real party in interest. By another pleading the Rusches prayed for an order nunc pro tunc sustaining their motion for new trial as of some date during the lifetime of E. M. Bissell. Thereafter, on November 5, 1935, the following journal entry was filed:

"It appearing to the court that the plaintiff, E. M. Bissell, died on or about November 28, 1933, which fact was not known to the court nor to the defendants nor the attorneys for plaintiff, until after February 28, 1935. The court is of the opinion that it had no jurisdiction to make and enter the order which was purported to have been entered in the above entitled action on the 28th day of February, 1935, sustaining the motion for new trial of the defendant, Rusche.

"It is therefore hereby ordered, adjudged and decreed that the previous order of this court entered on February 28, 1935, sustaining the motion for new trial of the defendants, Rusche, is hereby vacated, set aside and annulled, and the motion for nunc pro tunc order of Louis J. Rusche, Minnie Rusche and J. J. Rusche is hereby overruled and denied."

The motion of Phillips for new trial was later, by one order, overruled and by another order dismissed. No appeal was taken from any of the above orders.

This record stood until July 22, 1936, at which time Davis obtained leave and filed intervening petition, wherein he

alleged that said judgments had become final and that he was the owner of the judgment and of the premises involved; that he was and had been in the exclusive possession thereof ever since the rendition of said judgment March 8, 1933, and that defendants Louis J. and Minnie Rusche and Phillips had been producing from said premises oil and gas without his consent; he prayed for an accounting. Summons was issued and served upon Phillips and the Rusches.

Phillips filed petition for removal to the United States District Court. An order of removal was entered, but the case was remanded to the district court of Oklahoma county.

After demurrer to intervening petition was overruled, and some amendments to the intervening petition were filed, Phillips filed its separate answer to the intervening petition. Therein, after general denial, it set forth all the proceedings theretofore had in the original case. It alleged in substance the validity and finality of the order of February 28, 1935, vacating the judgment. It then pleaded its lease from the Rusches, set forth the deeds from E. M. Bissell to A. Bissell, and from A. Bissell to Davis, and pleaded that said deeds were champertous and in violation of the statutes. It also pleaded laches and statute of limitations.

The matter was referred to M. M. Thomas as referee with directions to take evidence, make findings of fact and conclusions of law, and return same to the court together with a transcript of the evidence. Said order provided:

"That all findings of fact and conclusions of law of said referee shall be subject to the approval of this court, and after ruling by this court thereon, shall, in the event of an appeal, be subject to review by the Supreme Court of the State of Oklahoma; . . ."

Thereafter Davis filed his reply, wherein he denied that Phillips or the Rusches had taken oil and gas from said lots, and alleged that said oil was taken from said block under and by virtue of the order of the board of adjustment, setting out a copy thereof; that under said order he, Davis, was entitled to participate pro rata in all the oil and gas produced thereunder.

Phillips filed a motion to strike said reply as being a departure from his original petition.

Trial was had before the referee, resulting in finding of fact and conclusions of law adverse to the contentions of Phillips, and recommending that judgment be entered against Phillips and in favor of Davis for the principal sum of $41,670.78, with accrued interest to July 1, 1938, amounting in all to $51,611.41, and that he also be allowed interest on said principal sum to date of judgment and that the judgment bear interest at 6 per cent.

Exceptions to the report of the referee were filed by Phillips, and by Davis as to certain findings of the total area of the block, it being contended that the referee had included certain land outside the block, which if excluded would entitle Davis to recover some $3,000 more than the referee found due.

Both sides presented their objections and exceptions to the court, which were all overruled, and judgment was entered in accordance with the report of the referee. Phillips appeals, and Davis filed cross-petition in error.

Phillips first contends that Davis, at the outset, predicated his right of recovery upon the judgment of March 9, 1933, quieting title to lots 1 and 2 in E. M. Bissell, then alleged predecessor in title. It is then contended that said judgment was effectively vacated and set aside by the order of February 28, 1935, granting the Rusches a new trial, and that immediately upon the suggestion of the death of E. M. Bissell, on March 29, 1935, wherein it was made to appear that said E. M. Bissell had been dead more than one year, said action abated because no proceedings had been had to revive the action, and that in all subsequent proceedings in said cause the court was without jurisdiction. Davis contends that the judgment of March 9,

1933, was and is a valid and subsisting judgment; that before the Rusches were entitled to have their motion for new trial heard and considered, revivor was necessary in that the plaintiff Bissell had died, that more than one year had elapsed after the death of E. M. Bissell, and no proceeding had been had reviving the action, and that the trial court was without power or jurisdiction to hear and pass upon the motion for new trial, and therefore said judgment had become final.

The contention of Davis in this regard was sustained by the referee and the trial court, and Phillips contends that there was such error therein as to require a reversal of the judgment here involved.

If Davis was in fact depending entirely upon the judgment of March 9, 1933, for his right of recovery, the questions presented would require consideration. But from the record, it appears that Davis acquired whatever interest E. M. Bissell had in said lots by quitclaim deed from E. M. Bissell to A. Bissell, dated November 5, 1931, and quitclaim deed from A. Bissell to Davis, dated November 7, 1931. This was before the action was commenced in E. M. Bissell's name. But that did not dispose of the tax deed under which the Rusches claimed. It was necessary to have that deed set aside in order to destroy the rights of the Rusches to participate in the proceeds of the oil from said block, and cut off the right of Phillips as to the 7/8ths working interest which it claimed under the lease from the Rusches.

The general rule is that an action does not abate by the mere fact of the death of a party. There must be a suggestion of death to the court to effect an abatement. 1 C.J. 172, and cases cited.

The inconvenience resulting from the defect in the common-law system of remedies on the death of a party has led to adoption of statutes by the territorial and state Legislatures providing that an action shall not abate on the death of a party where a cause of action survives, or that specified actions or actions for specified causes shall not abate. 1 C.J. 154.

The general rule is that under such statutory provisions the death of the successful party, pending a motion for a new trial in an action which survives, does not bring about an abatement of the action nor affect the power of the court to consider and determine the motion. 1 C.J. 168.

The referee and the court both found, and the record clearly shows, that the death of the plaintiff occurred after the judgment in his favor was entered, but the fact of his death was unknown at the time the court entered the order granting a new trial.

Our statute, section 823, C.O.S. 1921, 12 O.S. 1941 § 1052, provides that no action pending in any court shall abate by the death of either or both parties thereto, except certain actions therein enumerated.

The trial court and the referee were both in error in holding that the court had no power to pass upon the motion for new trial on February 28, 1935.

Phillips contends that the court was without power to vacate its order of February 28, 1935, granting a new trial. This contention cannot be sustained. Motion to vacate was filed within the same term the order granting the new trial was made.

Section 556, O.S. 931, 12 O.S. 1941 § 1031, provides that the district court shall have power to vacate or modify its own judgments or orders at or after the term.

It has often been held that judgments or orders of courts of record are under control of the court pronouncing them during the term at which they are rendered or entered. Atchison, T. & S. F. Ry. Co. v. Washington, 176 Okla. 521, 56 P. 2d 1190; Firemen's Fund Insurance Co. v. Griffin, 176 Okla. 94, 54 P. 2d 1032. And where a motion involving such power filed during term is continued until next term, the action of the court thereon has the same legal effect

as if ruling had been made at term in which the motion is filed. Martin v. Jones et al., 111 Okla. 101, 238 P. 458; Hill v. Bucy et al., 95 Okla. 275, 219 P. 124; Parks et al. v. Haynes et al., 52 Okla. 63, 152 P. 400; Hawkins v. Payne, 129 Okla. 243, 264 P. 179.

The order granting a new trial, though within the power of the court, was effectively vacated by order of the court of November 5, 1935. This left the judgment in force with both motions for new trial pending. The motion of the Rusches was subsequently overruled apparently by consent of the Rusches, and by way of settlement between them and Davis. The motion of Phillips was thereafter once overruled and once dismissed. Neither order was appealed from, so the judgment became final.

We come next to consideration of the findings of fact and conclusions of law made by the referee and approved by the court on the accounting feature. Objections were filed to nearly all the findings of fact. Davis contends that the findings of fact made by the referee have the force and effect of a special verdict of a jury and are not to be set aside if there be any competent evidence to sustain them. But this action, as to the accounting, is of equitable cognizance. The order of reference specifically provides the referee "shall make written report to the court of all his findings of fact and conclusions of law . . . and shall report to the court all evidence adduced before said referee; . . . that all findings of fact and conclusions of law of said referee shall be subject to the approval of this court, and after ruling by this court thereon, shall, in the event of an appeal, be subject to review by the Supreme Court of the State of Oklahoma." Our statute, section 377, O.S. 1931, 12 O.S. 1941 § 614, provides that "when the referee is to report the facts, the report has the effect of a special verdict." There is some conflict in the decisions of this court as to what effect this court on appeal will give to findings of fact of a referee. But, where the order of reference requires the referee to make findings of fact and conclusions of law

and report same to the court, together with all the evidence adduced before the referee, substantially all the decisions agree that under such an order the evidence adduced before the referee is to be considered as a part of the record, and that in considering the report the trial court may review the evidence. Some of the decisions hold that on appeal the findings of the referee have the same force and effect of a special verdict and will not be disturbed where there is evidence reasonably tending to support such findings. Other decisions hold that under such circumstances the finding of the referee will not be disturbed unless upon review of the evidence such findings of fact are clearly against the weight of the evidence.

The distinction between actions at law and actions in equity is not always made. But as applied to actions of purely equitable cognizance, the proper rule is stated and applied in Noble et al. v. Johnson, 145 Okla. 46, 291 P. 26. Therein we held:

"Where an action in equity has been referred to a referee to hear the testimony, make findings of facts, conclusions of law, and report these, together with the testimony, to the court, and such report of the referee is approved in whole or in part by the trial court, and judgment rendered thereon, and on appeal to this court the error complained of is that the findings of fact and conclusions of law of the referee and the judgment of the trial court are not sustained by the evidence, such findings of fact and judgment will not be disturbed, unless this court can say they are clearly against the weight of the evidence."

See, also, Patton v. First National Bank & Trust Co., 176 Okla. 453, 56 P. 2d 1181.

Phillips excepted to finding of fact No. 3 and every part thereof for the reason that the same is not supported by the evidence. This finding, among other matters, states that in its application for a drilling permit Phillips alleged that it had no lease on said lots 1 and 2 and that said lots were owned by E. M. Bissell. This finding is true as

shown by the application introduced in evidence so far as it finds the petition alleged that Phillips held no lease on said lots, but is wholly unsupported by the evidence insofar as it finds that Phillips alleged that E. M. Bissell owned said lots 1 and 2. There is no such allegation in the petition, and that finding to that extent must be set aside. This finding also states that Phillips did not duly file an affidavit setting out its inability to obtain service upon said owner, E. M. Bissell. This finding became material only in connection with certain matters contained in the order granting the permit which calls for the filing of such affidavit. The order of the board of adjustment granting the permit contained the provision quoted above.

It is upon this provision and alleged failure to comply with the conditions above that Davis relies for his right to share in the so-called "seven-eighths working interest oil, gas or casinghead gas produced from said block 3 . . ." The referee found: "That no such notice was served upon said E. M. Bissell, as shown by the application of the Phillips Petroleum Company and other evidence in the case."

The application for permit did not and could not show anything with reference to such notice, because the application was filed long before the order was made requiring such notice. As stated before, the application itself did not show E. M. Bissell as the owner of lots 1 and 2.

The ordinance requires that there be attached to the application for permit "a certificate of title or titles or certificates from bonded abstracter certifying the last record owner of said property and the character of instrument or conveyance upon which the ownership rests." Such certificate was attached to the petition, certifying as to ownership and character of instrument under which title rests, as follows:

"1 and 2

E. M. Bissell (Deed)
Louis J. Rusche, (Deed)

title based on tax deed issued to him 5/9/21."

The same certificate certified that the lease owner of lots 1 to 4 was C. A. Rodesney, 1/32 interest; Rebecca Collins, 1/64 interest; ten other parties as owners of 1/128 interest, and balance of lease Mid-Texas Petroleum Co.; showing term of lease ten years from 9-12-30. Name of lessor was not given.

Another instrument attached to or filed in connection with its application as to ownership of lots 1 and 2 is as follows:

"Owner                    Address
E. M. Bissel              Unknown
                          serve notice by
                          publication.
Louis J. Rusche and
Minnie Rusche             Harrah, Okla."

Phillips was not bound by the certificate of the abstracter. It was compliance with the ordinance in filing such certificate.

Therefore, the application itself did not show Bissell as the owner. There was a certificate in connection with an application to drill in block 4, Aungst addition, wherein E. M. Bissell was listed as the owner of lots 1 and 2 in block 7, wherein his address was given as c/o Twyford & Smith, Tradesmens Bank Bldg., Oklahoma City. But this was as of May 13, 1932, long after the permit was granted to drill in block 3 and after litigation had been commenced as to the ownership of lots 1 and 2. If the certificate showed anything as to the last record owner of said lots, it showed same to be Louis J. Rusche and Minnie Rusche, Harrah, Oklahoma. Such finding is therefore without evidence to support it, insofar as it states that the application of Phillips showed E. M. Bissell to be the last record owner of lots 1 and 2.

Finding No. 6 is that no notice of application to drill nor of the intent to drill such well was given to the owner E. M. Bissell and no affidavit in lieu of such notice was ever filed by Phillips Petroleum Company.

The ordinance itself requires but one notice. That is the notice of hearing before the board of adjustment. The ordinance does not require the applicant to give that notice. It provides that before granting a permit, the board shall cause notice by registered mail to be given to all known owners not less than ten days prior to the date of the hearing, and if the address of any owner be unknown, upon affidavit duly filed setting out the inability of the applicant to obtain service upon such "unknown owner," the board of adjustment shall cause notice to be given by publication. The notice must be dated and signed by the clerk of the board.

The board of adjustment in its order granting the permit set forth that the board further found: ". . that due and proper notices have been given, as provided by ordinance, to all persons owning or claiming any interest or interests in lots or tracts of land within said block 3, Aungst addition. . . ."

There is no evidence in the record that such notice was not given. The finding of fact No. 6, that no notice of application of a permit was given, is without any evidence to support it and is refuted by the order of the board finding that such notice was given.

Finding No. 6 also finds that no notice of intent to drill such well was given to E. M. Bissell and no affidavit in lieu of such notice was ever filed by Phillips. So far as the record shows, this notice is not required by the ordinance. The order granting the permit was the only requirement calling for such notice, as appears from the order quoted above. This notice was required to be given within ten days after the issuance of the permit, and required that the "applicant shall serve written notice, either by registered mail to the last known address or addresses, or by personal service upon all lease owner or owners of unleased lots or tracts that appellant intends to drill or is drilling." This notice under the order could be given only by one of two methods. No substitute service was provided. The

order did not call nor provide for an "affidavit in lieu of such notice," by applicant or any other person. That finding concerning "affidavit in lieu of the notice" has no place in the record, and is not within any issues. Therefore, it should not have been considered.

Admittedly, the notice of intent to drill was not given to E. M. Bissell; the finding to that extent is borne out by the record.

From the record as a whole, it clearly appears that such notice could not have been served on E. M. Bissell by either of the two methods set forth in the order. The whereabouts of E. M. Bissell at that time was unknown, so far as the record shows he had no last known nor any known address. The only clue that any one connected with the proceedings at that time had as to the whereabouts or address of E. M. Bissell was a notation made in the office of the registrar of deeds where the deed by which E. M. Bissell acquired his title to said lots 1 and 2 was filed for record in 1909, "Return to 115 North Robinson." This would apparently indicate that 115 North Robinson street in Oklahoma City might have been the address of the grantee at that time. The record, however, shows that in 1909, 115 North Robinson was vacant. So the order of the board of adjustment requiring service of notice in the manner set forth, so far as it applied to E. M. Bissell, as purported owner of lots within said block 3, called for an impossibility, unless, by due diligence, Phillips could have ascertained a last known address of E. M. Bissell. The referee under the heading of conclusions of law No. 4 made a finding of fact:

"Under the evidence Phillips did not know the address of E. M. Bissell and while they made some little inquiry in attempting to ascertain the same, the evidence does not show diligence. Phillips did not file an affidavit in lieu of mailing."

Examination of the record will disclose that this finding or holding, insofar as it finds or holds that the evidence did

not show due diligence, is clearly against the weight of the evidence.

The record shows that J. S. Williams, division superintendent for Phillips, made every reasonable effort and did substantially everything possible to ascertain the whereabouts of E. M. Bissell, all to no avail. He testified that no notice was given E. M. Bissell pursuant to the order of the board of adjustment, because "we made very thorough and extensive search for E. M. Bissell and A. Bissell, and having failed to find any of these parties, we thought it would be futile to try to serve a notice on them."

He then went into detail as to what he did and caused to be done in an effort to locate E. M. Bissell. Without setting out his evidence, we deem it sufficient to show due and proper diligence.

In conclusion No. 6 the referee holds: Bissell and his grantees are in the same position as one owning lots with no service upon them as required under the ordinance.

This conclusion is without support. As above pointed out, the only notice required by the ordinance was given. But it may well be questioned whether, under the record as a whole, · Phillips was required to serve notice on E. M. Bissell of intention to drill the well.

Referring again to the ordinance, it requires that a certificate of title or titles or certificates from bonded abstracter certifying the name of the last record owner of said property and the character of instrument or conveyance upon which the ownership rests must be attached to an application for a permit. Manifestly, the purpose and only purpose of this requirement is that the building superintendent and the board of adjustment might have reliable information from some source other than the applicant as to the names of last record owners, in order to determine upon whom notice is to be served.

The certificate of the abstracter in this instance clearly indicates that Louis J. Rusche, and not E. M. Bissell, was the last owner of record as to lots 1 and 2. Their ownership at that time had not been questioned. The ordinance does not require the abstracter or anyone else to decide or determine and certify whether the title under which the owner claims be valid. All the ordinance requires is that the name of the last owner as shown by the record be given and the character of instrument or conveyance upon which the ownership rests be given. This was done, and it shows Louis J. Rusche as the last owner and his ownership rested upon a tax deed issued to him May 9, 1921.

The notice required by the ordinance is by registered mail to all known owners. That, under the ordinance ' as a whole, means all last owners of record whose addresses are known, and that if the address of any such owners, and this means last owners of record, be unknown, then notice by publication must be given. This does not mean that notice must be given to any person who might possibly claim as against the last owner as shown by the record. The ordinance contemplates only notice to last owners of record. It does not call for notice to all predecessors in title. The whole proceeding is for the purpose of determining whether a permit to drill should be granted, and not to determine questions of title or decide between two contesting claimants of title.

The power of the board of adjustment is to determine whether the applicant owns or controls or has under lease not less than 51 per cent of all the property within the block. So far as the record discloses, all notices to last owners of record, as certified by the bonded abstracter, required by the ordinance and order of the board of adjustment, were given.

Thereupon Phillips proceeded to drill the well and in so doing expended about $100,000 before it was determined that the well would be profitable. E. M. Bissell sat by without asserting any claim of ownership to lots 1 and 2. He had paid no taxes on said lots after 1917.

The Rusches had obtained their tax deed in 1921 and paid taxes on the lots thereafter. It was not until after Phillips had assumed the risk and enhanced the value of all lots in the block for oil and gas purposes that E. M. Bissell again became interested and quitclaimed his interest to A. Bissell. And A. Bissell in turn quitclaimed to Davis. It is probable that had the drilling venture been a failure, neither Bissell nor Davis nor his successor in interest would have assumed their proportionate share of the expenses incurred.

Davis had no interest whatever until the venture had proved successful; not until after it was known that the well would be highly profitable did he decide to take a chance in a venture which had already been won. Whatever right Davis has to participate in the production from the well arises from three sources: (1) by purchase through A. Bissell from E. M. Bissell; (2) by purchase of the interest of the Rusches; and (3) by the provisions of the ordinance permitting oil wells to be drilled within the corporate limits of the city. Without said ordinance Davis could have had no right to participate, because the well was not drilled on said lots 1 and 2. The right of either Bissell, Davis, or the Rusches to participate depended upon the relationship created by said ordinance. This relationship is in the nature of a tenancy in common. But the parties cannot assert common-law right as tenants in common, for such a tenancy does not exist. Amis v. Bryan Petroleum Corporation, 185 Okla. 206, 90 P. 2d 936. The rights of nonleasing owners of lots are entirely the creations of the ordinance  The purpose and intent of the ordinance is to require lot owners to bear their proportionate share of the expense in order to participate in the production. If the owner leases his lot, he is thereby relieved from paying his part of the expenses. It is the intent of the ordinance that he pay or secure payment of his part of the expense in order to share in the whole production. In equity he ought not to be permitted to stand by and see the operator take all the chances of failure and come in and pay or offer to pay only after the venture has proved successful.

Under the record in this case, the law and principles of equity, the judgment of the trial court is against the clear weight of the evidence, contrary to law and in violation of the principles of equity insofar as it allows Davis to participate in the full production of the well, less his proportionate share of expenses. But under the ordinance and other provisions of the order of the board of adjustment, Davis is entitled to share in $\frac{1}{8}$ of the oil and gas produced from said well in the proportion that the area of lots 1 and 2, exclusive of streets and alleys, bears to the entire area of said block 3.

In his cross-petition in error Davis contends that the referee and the court, in adopting the findings of said referee, erred in the matter of computing the total area of land entitled to participate in the distribution of funds derived from the production from said well.

It appears that the channel of the North Canadian river runs along the west side of said block 3. The referee found that the total area of said block, exclusive of streets and alleys, is 175,475 square feet, and that the area of lots 1 and 2 is 7,220 square feet. Davis contends that in computing the area of the block the referee included the east one-half of the river bed. It is contended that the river bed should be excluded. The ordinance defines a "block" as used therein to mean "a tract of land which has for its exterior boundary lines public streets, United States government lot lines, the channels of streams, the corporate limits of the city of Oklahoma City, railway right of ways or unplotted tracts of land, provided that in unplotted tracts the term 'block' shall mean one contiguous tract of not less than five (5) acres." It is asserted that the evidence shows that said block 3 was bounded on the west by a government lot line, or an unplotted tract of land; that it contained more than two and one-half acres, and therefore of itself constituted a drilling block.

Assuming as stated that the evidence shows that block 3 is bounded on the west by a government lot line and also by an unplotted area, it also shows that it is bounded on the west by the channel of the river. The "unplotted" land referred to is within that channel. It is well settled, and it is unnecessary to cite authorities thereon, that ownership and title of a riparian owner of land along a nonnavigable river extends to the middle of the channel of such stream; that while the ordinance does define a drilling block, its definition includes as a boundary of a block the channel of a stream. The ordinance gives the bare authority to make orders, which may be proper or equitable for all persons interested and shall protect and safeguard the rights of all parties affected. In this case the order of the board is that each owner of lots and parcels of land in said block 3 shall be entitled to receive that "proportionate part of ⅛ of the oil, gas and/or casinghead gas that shall be produced . . . which the area of such lots, exclusive of streets and alleys, bears to the entire area of said block, exclusive of streets and alleys." The lots along the river extend to the middle of the channel of the river. The order did not read "exclusive of the river bed."

It is by virtue of the order that the owners of lots 1 and 2 are entitled to participate in the ⅛ of the oil, etc., produced from said well. It is also by virtue of this that every other lot owner in said block is entitled to participate. It is true that owners who have leased were also entitled to their ⅛ under their leases. They are entitled to participate to the full extent of the area of their lots, and while the plat does not show their lots extending to the middle of the channel of the river, the law does extend the lots.

There was therefore no error in including that part of the channel of the river in the area of the block in order to do complete justice to all the lot owners.

The judgment of the trial court is re-versed, with directions to enter judgment in favor of Davis for his proportionate part of the ⅛ of the oil, gas, and casinghead gas produced from said well, computing the area of the block in accordance with the views herein expressed.

WELCH, C.J., CORN, V.C.J., and BAYLESS, GIBSON, and DAVISON, JJ., concur. OSBORN, HURST, and ARNOLD, JJ., absent.