W. E. ANDERSON, Plaintiff,

v.

The CORPORATION COMMISSION of the
State of Oklahoma and Kenneth
A. Ellison, Defendants.

No. 36969.

Supreme Court of Oklahoma.

Feb. 26, 1957.

Rehearing Denied July 2, 1958.

**700**

Bohanan & Barefoot, Oklahoma City, Rinehart & Rinehart, El Reno, Leon S. Hirsh, Oklahoma City, for plaintiff.

Robinson, Shipp, Robertson & Barnes, Ralph Boggess, for K. A. Ellison.

Floyd Green, Oklahoma City, for Corp. Commission of Oklahoma.

DAVISON, Justice.

This is a proceeding in this court, instituted by W. E. Anderson, as plaintiff, against the Corporation Commission of Oklahoma and Kenneth A. Ellison, as defendants, on appeal from an order of said Commission, authorizing the drilling of an oil well on an eighty acre tract of land in McClain County, Oklahoma, and directing the terms of participation in the production therefrom.

Anderson was the owner of 36.96% of the fee in a forty acre tract of land. Ellison was the owner of 25.2% of the leasehold estate in the adjoining forty acres. The two tracts had been by prior order of the Commission, designated as a single drilling or spacing unit in which the parties' respective percentage interests were one half that in the individual forties as above set out. On May 11, 1955, on application of Ellison, the Commission made an order finding the percentage ownership of said unit and that all other owners except Anderson had agreed with Ellison on a plan of development of the unit. Ellison was authorized to drill a well, the cost of completing the same being near $300,000. Anderson was authorized to participate in

the working or lessee interest by paying to Ellison his proportionate share of the drilling and completion costs of the well. The Commission further found that $800 per acre was the reasonable bonus value of the leasehold and ordered that Anderson have the option of electing to participate in the working interest in the well or to accept from Ellison $800 per acre bonus for a lease on his undivided interest. It was further ordered that, if Anderson had not made an election within thirty days thereafter, he would be presumed to have "elected to take the said $800 per acre bonus for the acreage owned by him underlying said tract." It is from that order that this appeal has been perfected.

Anderson's attack upon the order is founded upon the assertion that, by reason of the pooling and unitization order, a cotenancy relationship was created between himself and Ellison; that the order appealed from was in violation of the rights of co-tenants and outside the authority conferred by the statute—52 O.S.1951 § 87.1; that, if said statute authorized the order, it violates the provisions of the State and Federal Constitutions in that it amounted to a taking of private property for private use and without due process of law; that, if said statute authorized that order, it is further unconstitutional in that it compels citizens to contract against their wills and it also impairs vested contractual rights; and lastly, that the Corporation Commission could not exercise such judicial powers except by a due process of law wherein a litigant is entitled to a trial by jury.

Petroleum and petroleum products have, in less than two generations, become most vital in life and industry over the entire world. They have, by reason thereof, become probably the most important of natural resources. It was only natural that, with the increase in importance and use, the necessity for conservation was recognized. To curtail over-production and waste for the benefit and protection of the general public, restraints had to be placed around the individual's rights to develop and produce beyond the demand or need.

The only logical method of restraint, other than limitation of production per well, was the curtailment of drilling by exercise of the police power. There evolved the well spacing laws. But, with well spacing alone, the object of curtailment was met, although often at the expense of serious inequalities and inequities between the various mineral owners and lessees. Under such primary restraints, when Ellison drilled a well on the forty acres in which he owned an interest, Anderson would have no rights whatever therein, his ownership being of an interest in an adjoining forty acres. Thus, consideration of the correlative rights of such owners and lessees became a necessary part of the legislation. The results were the acts authorizing unitization and pooling in each common source of supply in order that the exercise of the police power in the conservation of natural resources would not effect too serious an unbalancing of correlative rights. The act under consideration, 52 O.S.1951 § 87.1, authorized the order complained of as a necessary and integral part of securing those various rights. In that connection, we are here dealing with rights of the owners of what is commonly called the "working interest." No issue is presented as to the other one eighth or "royalty interest."

By the order, Ellison who had made agreements with all other owners of interests in the minerals underlying the eighty acre drilling unit for development of the same, was granted a permit to drill a well on the forty acres in which he owned an interest but in which Anderson owned none. By the same order, Anderson was granted the privilege of participating in the production from that well if he met the requirements. He could pay his proportionate part of the drilling and completion costs of the well and receive his portion of the seven eighths working interest of the production or he could accept $800 per acre as a bonus therefor and share only in the royalty interest.

We need not consider the reasonableness of the order since Anderson's contention

goes solely to the authority of the Commission to make it. His argument is that, because the former order made him and Ellison co-tenants in the eighty acres, the only method by which Ellison could recover, under the rules of law applicable to such a relationship, Anderson's proportionate part of the cost was by deducting it from the production, if the well proved to be good. However, with so many interdependent rights and burdens to be established it is not a simple proposition of determining the existence of co-tenancy. In the case of Amis v. Bryan Pet. Corp., 185 Okl. 206, 90 P.2d 936, 939, an almost identical relationship existed by reason of municipal zoning ordinances controlling drilling. It was there said that,

"Here the city created the relationship as it now exists between the parties. Had it not been for the zoning ordinance none of the lot owners would have held an interest in the oil. and gas rights beneath the lots of the others. The relationship in the nature of a tenancy in common resulted merely as an incident to the application of the city's police powers. The tenancy * * * is entirely subject thereto. The parties cannot successfully assert their common law rights as tenants in common, for such a tenancy actually does not exist."

Expanding that statement, in another case dealing with municipal ordinances, it was said in the case of Phillips Pet. Co. v. Davis, 194 Okl. 84, 147 P.2d 135, 145 that,

"The rights of non-leasing owners of lots are entirely the creations of the ordinance. The purpose and intent of the ordinance is to require lot owners to bear his proportionate share of the expense in order to participate in the production. If the owner leases his lot, he is thereby relieved from paying his part of the expenses. It is the intent of the ordinance that he pay or secure payment of his part of the expense in order to share in the whole production. In equity he ought not to be permitted to stand by and see the operator take all the chances of failure and come. in and pay or offer to pay only after the venture has proved successful."

The limitation of co-tenancy rights and privileges of some of the mineral owners is no greater burden on them than is the limitation of the rights and privileges of capture of the operating mineral owners. In the case at bar, Anderson, had no more justification for complaint of being required to elect whether to pay his portion of the costs or accept the fixed bonus for a lease, than Ellison had to complain of being required to share with him the object of his capture—the production from the well. Both were prerequisites to other rights and privileges granted by the same order under authority of the same statute.

This court has, on several occasions, held that unitization and pooling statutes were constitutional, where the question was raised by the producer. Such was the situation in one of the first cases to be here presented on the subject—Patterson v. Stanolind Oil & Gas Co., 182 Okl. 155, 77 P.2d 83. Following and citing the Patterson case, was that of Croxton v. State, 186 Okl. 249, 97 P.2d 11. Cited and discussed in those two cases, are a majority of the opinions of various other courts, both state and federal, on the subject. Quoted in both was the following excerpt from the case of Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475, 478, to-wit:

" 'All property is held subject to the valid exercise of the police power; nor are regulations unconstitutional merely because they operate as a restraint upon private rights of person or property or will result in loss to individuals. The infliction of such loss is not a deprivation of property without due process of law; the exertion of police power upon subjects lying within its scope, in a proper and lawful manner, is due process of law.' "

That statement is applicable to the case at bar. The order complained of did not

constitute a taking of property of Anderson in any manner. It granted him the right to participate in the production from a well on Ellison's property, but on condition that certain requirements were met. The limitation of one well to eighty acres was a proper exercise of the police power in furtherance of conservation of natural resources. That he was allowed to share in the production or to receive a bonus instead of that participation was a grant to him at the expense of Ellison merely because of the recognition of correlative rights. On the other hand, Ellison was not deprived of anything because he was granted the right to drill the only well which would be permitted on the eighty acre drilling unit upon condition that Anderson (and other owners of leasehold interests) could participate in the production upon payment of his part of the cost. Both were forced to co-operate for the benefit of both and for the protection of the public generally.

The Supreme Court of the United States, in the case of Hunter Co. v. McHugh, 320 U.S. 222, 64 S.Ct. 19, 21, 88 L.Ed. 5, made the following statement, supporting it with citation of numerous earlier cases,

"A state has constitutional power to regulate production of oil and gas so as to prevent waste and to secure equitable apportionment among landholders of the migratory gas and oil underlying their land, fairly distributing among them the costs of production and of the apportionment."

Citing and quoting the last above mentioned opinion, this court held similar orders valid and the statutes authorizing them to be a valid exercise of the police power, in the case of Wood Oil Co. v. Corporation Commission, 205 Okl. 537, 239 P.2d 1023. To the same general effect were the cases of Spiers v. Magnolia Pet. Co., 206 Okl. 510, 244 P.2d 852, and Palmer Oil Corp. v. Phillips Pet. Co., 204 Okl. 543, 231 P.2d 997.

■ A situation almost identical to that in the case at bar, was presented in the case of Superior Oil Co. v. Oklahoma Corporation Commission, 206 Okl. 213, 242 P.2d 454. Therein, the appeal attacked the reasonableness of the order rather than the constitutionality of the statute. However, the parties did present the question as to whether or not the order itself violated constitutional guaranties and it was upon that ground that three of the justices dissented. The opinion of the court was in harmony with the quoted rule in the Hunter Co. case, supra. For the same reasons, the order herein and the statute authorizing it were not invasions of the rights of Anderson, as guaranteed by the State and Federal Constitutions.

■ As pointed out in the above discussion, the order of the Commission did not deprive Anderson of any property rights. He was granted the right to participate in oil produced from another's well upon compliance with fixed requirements. Therefore he was not entitled to have a jury trial. This situation was in addition to the proposition that the order was regulatory and in the exercise of the police power. By such exercise, the State may do away with a cause of action and, the right to jury trial being incidental thereto, is thereafter no longer involved. Adams v. Iten Biscuit Co., 63 Okl. 52, 162 P. 938. That case cites and quotes the case of State v. Mountain Timber Co., 75 Wash. 581, 135 Pac. 645, L.R.A.1917D, 10, wherein many of the early cases are collected which discuss the proposition that the police power may be exercised without resort to judicial proceedings. The last two above cases dealt with the Workmen's Compensation Acts but the rules of law are the same.

■ It has been ardently argued by plaintiff Anderson that the order of the Commission from which this appeal has been filed "is unreasonable and unjust and is in excess of the authority vested in the Commission" because of "not providing in the alternative the right of the non-driller to give bond as security for said sum" in view of the holding in the Superior Oil Co. case, supra. That part of that opinion is,

however, not here applicable because of the difference in the Commission's order there and the order herein. The order in the Superior Oil Co. case [206 Okl. 213, 242 P.2d 457] provided:

"That in the event the respondent Superior Oil Company has not *paid* to the applicant herein *its proportionate share of the cost* of the drilling and completion of said well within said 10 day period then it shall be assumed that the respondent Superior Oil Company has elected to accept the sum of $500.00 per acre for its lease in said unit * * *." (Italics added.)

The order in the instant case provided:

"That the said W. E. Anderson shall have thirty (30) days from the date of this order within which *to make an election* as to which alternative he desires to accept, and that in the event he does not *make such* election, it will then be presumed that he has elected to take the said $800.00 per acre bonus for the acreage owned by him underlying said tract." (Italics added.)

Thus, it is readily seen that the only thing Anderson was required to do by reason of said order was to elect whether he would participate in the drilling and operation of the well or would sell his leasehold rights. In the Superior Oil Co. case, the non-driller was required to make payment within a fixed time if he desired to participate. The making of a bond is the alternative to making payment and, until payment is required, the alternative need not be granted.

For the reasons stated, the order of the Corporation Commission appealed from is affirmed.

HALLEY, JOHNSON and JACKSON, JJ., concur.

WILLIAMS, J., concurs by reason of stare decisis.

WELCH, C. J., and BLACKBIRD and CARLILE, JJ., dissent.