285 F.2d 484
 W. E. ANDERSON, Appellant,
v.
Kenneth A. ELLISON; Sinclair Oil & Gas Company, a
corporation; Cities Service Oil Company, a corporation;
Phillips Petroleum Company, a corporation; Warren Petroleum
Corporation, a corporation; Corporation Commission of
Oklahoma; Mineral Mining Company, a corporation; and G.B.
McKinley, Appellees.
 No. 6423.
 United States Court of Appeals Tenth Circuit.
 Dec. 13, 1960.
 
 Luther Bohanon and Leon S. Hirsh, Oklahoma City, Okl. (Bert Barefoot, Jr., Oklahoma City, Okl., on the brief), for appellant.
 T. Murray Robinson, Oklahoma City, Okl. (C. E. Barnes and Ralph E. Boggess, Oklahoma City, Okl., on the brief), for appellees Kenneth A. Ellison, Mineral Mining Co., and G. B. McKinley.
 Angus A. Davidson and James H. McGowan, Tulsa, Okl., and Russell V. Johnson, Oklahoma City, Okl., submitted a brief for appellee Sinclair Oil & Gas Company.
 Before BRATTON, PICKETT and BREITENSTEIN, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 This diversity action is an aftermath of extensive litigation which resulted in the affirmance of an order of the Oklahoma Corporation Commission fixing the rights and liabilities of the owners of undivided interests in a drilling and spacing unit established for the production of oil and gas from a common source of supply. Anderson v. Corporation Comm., Okl., 327 P.2d 699. An appeal to the Supreme Court of the United States was dismissed for want of a substantial federal question. Anderson v. Corporation Comm,, 358 U.S. 642, 79 S.Ct. 536, 3 L.Ed.2d 567. The complaint sets forth the entire proceedings before the Commission; alleges that the plaintiff Anderson was the owner of a portion of the unit; and, although admitting that the offer was made after the time fixed in the order, alleges that Anderson had offered to pay his proportionate share of the cost of drilling and completing the well. It was asserted in the complaint that the Commission unlawfully assumed judicial powers not granted by law and was without authority to divest an owner of an interest in a drilling unit of that interest. The complaint sought a judgment declaring that Anderson was the owner of an undivided interest in the unit and entitled to receive his share of the oil and gas produced therefrom. There were no material issues of fact, and the matter was submitted to the trial court on the several motions of the parties for summary judgment. This is an appeal from an order dismissing the action after consideration of those motions.
 
 
 2
 In 1953 the Corporation Commission established 80-acre drilling and spacing units for the Bromide Sand Section of the Simpson formation in McClain County, Oklahoma. Anderson owned 36.9% Of the minerals under one 40-acre tract which constituted one-half of the drilling unit, and the defendant Ellison owned 25.2% Of the leasehold in the adjoining 40 acres which constituted the other half of the unit. In 1955 Ellison applied to the Commission for an order pooling and fixing the rights and interests of all parties holding interests in the unit. The application alleged that all the owners except Anderson agreed upon a plan of development. After a hearing, the Commission designated Ellison as the operator of the unit, and authorized him to drill a well at an estimated cost of $300,000. The spacing order provided that the well should be located on the acreage in which Ellison owned an interest.
 
 
 3
 Although Anderson, in his response to Ellison's application stated that he did not desire to participate in the costs of drilling the well, the Commission's order permitted him to participate and retain a working interest by electing to pay his proportionate share of the drilling and completion costs. In the alternative, the order provided that Anderson could elect to accept a bonus for a lease of his undivided interest, and the Commission found that $800 per acre was the reasonable bonus value of the leasehold interests in the unit. The order also provided that if Anderson did not make an election within 30 days, it would be presumed that he had elected to accept the $800 per acre bonus for the interest owned by him.
 
 
 4
 Anderson took an appeal to the Oklahoma Supreme Court, but no attempt was made to supersede the Commission's order.[1] While the appeal was pending, Ellison proceeded to drill the authorized well and completed it as a producer. Thereafter the Commission denied Anderson's request to fix the amount of his proportionate share of the cost of the well, which he then offered to pay. Anderson contends that the present action, instead of being a collateral attack upon the Commission's order, is brought for the purpose of obtaining a decree declaring that the order does not divest him of his interest in the unit and that he is still the owner thereof.[2] The well was drilled on the half of the unit in which Anderson had no interest. Without the spacing statute and the Commission's pooling order he would have no right to share in the oil and gas produced from the well.[3] Cf. Phillips Petroleum Co. v. Davis, 194 Okl. 84, 147 P.2d 135; Amis v. Bryan Petroleum Corp., 185 Okl. 206, 90 P.2d 936.
 
 
 5
 Title 52 Okl.St.Ann. 87.1 provides that 'All orders requiring such pooling shall be made after notice and hearing, and shall be upon such terms and conditions as are just and reasonable and will afford to the owner of such tract in the unit the opportunity to recover or receive without unnecessary expense his just and fair share of the oil and gas. * * *' The statute also states, 'Such pooling order of the Commission shall make definite provisions for the payment of costs of the development and operation, which shall be limited to the actual expenditures required for such purpose not in excess of what are reasonable, including a reasonable charge for supervision. In the event of any dispute relative to such costs, the Commission shall determine the proper costs after due notice to interested parties and a hearing thereon. * * *' The constitutionality of the statute as an exercise of the state's police power is no longer open to question. Hunter Co. v. McHugh, 320 U.S. 222, 64 S.Ct. 19, 88 L.Ed. 5; Wakefield v. State, Okl., 306 P.2d 305; Patterson v. Stanolind Oil & Gas Co., 182 Okl. 155, 77 P.2d 83, appeal dismissed 305 U.S. 376, 59 S.Ct. 259, 83 L.Ed. 231. The Oklahoma Supreme Court's syllabus[4] to its decision upholding the Commission's order in this case is as follows:
 
 
 6
 '1. By the provisions of 52 O.S. 1951, sec. 87.1, the Corporation Commission is authorized to fix the proportionate part of the cost of drilling and completing an oil and gas well to be paid by an owner of an undivided part interest in the leasehold estate in a drilling unit and order such owner to elect to pay the same or to accept a fixed sum per acre as a bonus for a lease and to further order that, if the election is not made within a fixed time, it be presumed that he has elected to take the bonus for a lease.
 
 
 7
 '2. Section 87.1 of Tit. 52 O.S. 1951, is not in conflict with the State or Federal Constitutions guaranteeing that private property shall not be taken for private use nor without due proceess of law.
 
 
 8
 '3. A statute authorizing the Corporation Commission to regulate production of oil and gas so as to prevent waste and to secure equitable apportionment among owners of the leasehold interest of the oil and gas underlying their land, and to fairly distribute among them, the costs of production and of the apportionment is a proper exercise of the police power and does not violate the provisions of the State or Federal Constitutions.' Anderson v. Corporation Comm., supra, 327 P.2d at page 700.
 
 
 9
 Although Anderson advances a theory that there remains to be decided the question of whether the Commission's order had the effect of divesting him of his previously vested interest in the unit and transferring the same to Ellison, we think the Oklahoma Supreme Court settled this and other questions as to his rights, and that this action is an attempt to relitigate the same issues. In unmistakable language, the result of the Oklahoma Supreme Court's decision is that, except for his royalty interest, Anderson lost his right to receive a percentage of the production. He is limited to a recovery of the lease bonus fixed by the Commission,[5] and further action is unnecessary. Nothing remains to be done to comply with the order except the payment of the bonus to Anderson, and it has been tendered. The effect of the order was not stayed pending the appeal in the absence of compliance with the statutory provisions. The order of the Commission, without a supersedeas bond, may not be disregarded pending an appeal. 52 Okl.St.Ann. 113; Amis v. Bryan Petroleum Corp., supra.
 
 
 10
 Affirmed.
 
 
 
 [1]
 Title 52 Okl.St.Ann. 113, provides:
 'No order, rule, regulation, judgment or decree or final action of the Commission appealed from shall be superseded except by order of the Commission or the Supreme Court. No supersedeas shall be granted by either the Commission or the Supreme Court except upon condition that the appellant shall file in said appeal a bond with such surety as shall be approved by the Commission or the Supreme Court, granting such supersedeas. * * *'
 
 
 [2]
 In his brief, Anderson states: 'The comprehensive legal issue is whether or not a certain Order of the Oklahoma Corporation Commission had the authoritative effect of divesting Appellant of his previously vested interest in the 'unit' and of transferring that valuable property right to the Appellee Ellison as claimed by the latter and his grantees.'
 
 
 [3]
 In discussing the relationship of the owners of unit interests, the Supreme Court of Oklahoma said:
 'The limitation of co-tenancy rights and privileges of some of the mineral owners is no greater burden on them than is the limitation of the rights and privileges of capture of the operating mineral owners. In the case at bar, Anderson, had no more justification for complaint of being required to elect whether to pay his portion of the costs or accept the fixed bonus for a lease, than Ellison had to complain of being required to share with him the object of his capture-- the production from the well. Both were prerequisites to other rights and privileges granted by the same order under authority of the same statute.' Anderson v. Corporation Comm., Okl., 327 P.2d 699, 702.
 
 
 [4]
 In Oklahoma, the Court's syllabus states the law of the case. 12 Okl.St.Ann. 977; City of Altus v. Martin, Okl., 268 P.2d 228; 1942 Chevrolet Automobile No. BA193397 v. State ex rel. Cline, 192 Okl. 555, 136 P.2d 395; Corbin v. Wilkinson, 175 Okl. 247, 52 P.2d 45
 
 
 [5]
 In affirming the Commission's order, the Oklahoma Supreme Court cited Phillips Petroleum Co. v. Davis, 194 Okl. 84, 147 P.2d 135, in which a similar question was involved and quoted this language from 147 P.2d 145:
 "In equity he ought not to be permitted to stand by and see the operator take all the chances of failure and come in and pay or offer to pay only after the venture has proved successful." Anderson v. Corporation Comm., Okl., 327 P.2d 699, 702.