**RASURE, Co. Supt., v. SPARKS et al.**

No. 10556—Opinion Filed July 22, 1919.

Rehearing Denied September 9, 1919.

(Syllabus by the Court.)

1. **Mandamus—Issue—Dissolution of School District.**

Where, in a proceeding for the dissolution of a consolidated school district authorized and provided for by chap. 202, Laws 1915, a petition is filed purporting to contain the signatures of one-half or more of the legal voters of the consolidated school district, asking that the county superintendent of public instruction call an election "for the purpose of voting on the question of whether such consolidated school district shall be dissolved," and which petition is accepted as sufficient by such school superintendent, and an election is duly called and held at which sixty per cent. of the voters of the consolidated district, voting thereat, vote in favor of dissolution, and the proper officer of such special election makes report of the election and the result thereof to the county superintendent, who refuses to discharge the duties imposed in sec. 2 of the act, such superintendent will not be permitted, in a mandamus action to compel the performance of his statutory duties, to attack the sufficiency of the petition or the qualifications of the voters at the election, the proceedings had being regular on their face and constituting a prima facie compliance with the statute.

2. **Same—Ministerial Duties—County Superintendents.**

The duties imposed upon a county superintendent by sec. 2, chap. 202, Laws 1915, in respect to declaring a consolidated school district dissolved, and the filling of vacancies in the "revived" school districts, involve the exercise of no discretion on the part of such superintendent, but are purely ministerial in their character, and their performance may be compelled by mandamus.

3. **Schools and School Districts—Consolidated District—Dissolution—Election.**

Section 2, chap. 202, Laws 1915, providing that "if sixty (60) per cent. of the voters of such district at the election held * * * shall vote to dissolve the consolidated district," requires only that sixty per cent. of the votes cast at the election shall be in favor of dissolution, and not that sixty per cent. of all the voters of the district shall vote therefor.

4. **Attorney General—Opinions—School Officers.**

It being the duty of the Attorney General, under section 8059, Rev. Laws, to give his opinion in writing, when requested, "upon all questions of law submitted to him by * * * any state official, commission or department," such advice, when obtained by the State Superintendent of Public Instruction

for and at the instance of a county superintendent, respecting the dicharge of the latter's official duties, should be followed.

Error from District Court, Caddo County; Will Linn, Judge.

Mandamus by R. D. Sparks, C. D. Klumpp and J. N. Kirk against C. W. Rasure. County Superintendent of Public Instruction, Caddo county. From the judgment granting a peremptory writ of mandamus, defendant brings error. Affirmed.

Gaspar Edwards, for plaintiff in error.

Bond, Melton & Melton, for defendants in error.

SHARP, J. On October 8, 1918, there was presented to C. W. Rasure, county superintendent of public instruction of Caddo county, addressed to him, a petition in due for, which on its face purported to bear the signatures of one hundred and seventy-seven legal voters of consolidated school district No. 22, Caddo county, asking that he call an election or meeting for the purpose of determining whether or not the consolidated district should be dissolved. Acting upon such petition, the county superintendent duly called an election, whereby there was submitted to the voters of the consolidated school district the question of the dissolution thereof. At the election so held two hundred and twenty-two votes were cast, one hundred and forty in favor of, and eighty-two against, dissolution. On the same day the election officers of the consolidated district reported in writing to the county superintendent that the election had been held and the number of votes for and against the issue of dissolution. Notwithstanding the result of the election, and the due certification thereof, the county superintendent refused to declare the consolidated district dissolved, and to appoint school board officers in district No. 153, one of the school districts located within the consolidated district. Mandamus proceedings were thereupon begun by Sparks, Klumpp and Kirk, resident tax payers and patrons of school district No. 153, to compel the issuance of a proclamation declaring the consolidated district dissolved and to appoint a school board in school district No. 153. The petition in substance alleges the facts above set forth. The answer does not put in issue, but in effect admits, the presentation of the petition purporting to bear the signatures of one-half of the legal voters of the district, pursuant to which a call for an election was made. But it was charged, in effect, that after the election was called, four affidavits were filed in the office of the superintendent to the effect that the district

contained in fact three hundred and eighty-five legal voters, and that, in reliance upon the proof submitted tending to show that the petition was insufficient in that it did not bear the requisite number of signers, and that sixty per cent of all of the legal voters of the consolidated district did not vote in favor of dissolution, and because "the day on which such purported election was held was a very rainy, stormy and muddy day, and that the epidemic known as the 'Flu' was quite prevalent in said district, all of which prevented a full vote on the question of dissolution," respondent had refused to act. Notwithstanding the action was for mandamus to compel the defendant, as a public official, to discharge a purely ministerial duty, it seems that the trial court permitted him to introduce a great number of witnesses upon the question of whether certain of the petitioners were qualified voters, and upon the further question of the number of qualified voters in the consolidated district. The result of this indulgence was a judgment against the respondent, the court finding that the petition was signed by more than one-half of the legal voters of the consolidated district, and that at the election held more than three-fifths of the voters voting at such election voted in favor of dissolution.

The statute, pursuant to which the proceedings for the dissolution of the consolidated district were held, is found in secs. 1 and 2, chap. 202, Laws 1915, wherein it is provided that the county superintendent of public instruction may, upon petition of one-half of the legal voters of any consolidated school district, call an election at some convenient place in such consolidated school district, for the purpose of "voting on the question whether such consolidated school district shall be dissolved." Notice of the election is required to be given by written or printed notices posted in at least five public places in the consolidated district at least ten days prior to the election. If sixty per cent. of the voters of such consolidated district, at the election, shall vote to dissolve the consolidated school district, the clerk of said special election shall report such fact to the county superintendent of public instruction, who shall thereupon declare such consolidated school district dissolved, and the original school districts which had united in forming the consolidated district "will thereupon be revived, and it shall be the duty of said county superintendent to appoint persons to fill all vacancies in the school boards for each of the school districts, who shall serve for the respective terms as other like officers in other school districts." It will thus be seen that it is the duty of the

county superintendent, when the issue submitted is carried by the requisite vote and report thereof is made, to declare the consolidated district dissolved, and to appoint members of the school board to fill vacancies in the respective school districts theretofore contained within the consolidated district. This duty involves no exercise of discretion on the part of the county superintendent, but is purely ministerial. The duty is one enjoined by statute upon a public official to put into effect and consummate the wishes of the voters, as expressed by them at an election publicly held. The statute does not give to the county superintendent the right to nullify the result of such an election, on the ground that in the opinion of the county superintendent "it would be better to retain the district as consolidated." No such autocratic or arbitrary power is conferred upon the county superintendent by the governing statute. The duty enjoined is imperative, as was the case in Jordan v. Davis, 10 Okla. 329, 61 Pac. 1063, wherein Chief Justice Burford said, referring to sec. 5820, Comp. Laws 1893:

"It was not intended by the Legislature to vest the officer with any arbitrary power of refusal, nor with a mere discretionary power to be exercised according to his whims or inclinations."

That mandamus is a proper remedy and will lie in such cases is well established in this jurisdiction. Territory ex rel. Jones, County Attorney v. Hopkins, Auditor, 9 Okla. 133, 59 Pac. 976; Davis, County Judge, v. Caruthers, District Judge, 22 Okla. 323, 97 Pac. 581; Smock v. Farmers' Union State Bank, 22 Okla. 825, 98 Pac. 945; Threadgill v. Cross, Secretary of State, 26 Okla. 403, 109 Pac. 558; Norris v. Cross, Secretary of State, 25 Okla. 287, 105 Pac. 1000; State ex rel. Freeling v. Lyon, Secretary of State, 63 Oklahoma, 165 Pac. 419. The case is one coming clearly within sec. 4907, Rev. Laws, providing that the writ of mandamus may be issued by the district court to any inferior tribunal, corporation, board or person, to compel the performance of any act which the law specially enjoins as a duty resulting from an office, trust or station. It is true that the writ will not issue in any case where there is a plain and adequate remedy in the ordinary course of the law (sec. 4908, Rev. Laws); but, in the instant case, had the wronged school patrons a plain and adequate remedy in the ordinary course of the law? They had filed their petition in due form, purporting to be signed by one hundred and seventy-seven voters of the district, and which was accepted by the county superintendent as sufficient to authorize the call for an election. At the election more than sixty per cent. of the voters, voting thereat, registered in favor of the dissolution. Counsel say they should have appealed. We know of no statute authorizing an appeal in such cases. If there were those who believed the election was illegal, they might, if they had chosen so to do, have instituted proceedings to contest the election in some form. This they did not do, but, as we are fairly warranted in saying, used the office of the county superintendent to thwart the will of the majority of the electors. When the returns of the election were reported to the county superintendent, and disclosed that sixty per cent. of the voters of the district voting at the election were in favor of dissolution, a prima facie compliance with the statute was made out. That is to say, the issue of dissolution was decided favorably to those advocating dissolution, and thereupon it became the duty of the respondent to so declare and make the necessary appointments to the school boards of the different districts. The precise question has not heretofore been presented to this court, to our knowledge. There is a class of cases, however, which we think, by analogy, are applicable, holding that in an action in mandamus where a relator shows a prima facie title to a public office, he is entitled to the aid of the writ to obtain possession of the books, records, insignia, paraphernalia and official belongings of such office, and that in granting the writ, the court will not go behind such showing and try the title thereto. Ewing v. Turner, 2 Okla. 94, 35 Pac. 951; Cameron v. Parker, 2 Okla. 277, 38 Pac. 14; Matney v. King, 20 Okla. 22, 93 Pac. 737. As held in the latter case, mandamus is the proper remedy to compel recognition of the person holding prima facie title to the office. In Delgado v. Chavez, 140 U. S. 586, 36 L. Ed. 578, it was said by Justice Brewer that the direct purpose and object of the writ of mandamus was to compel the defendant to discharge his duty, and to forbid him to assume to determine any contest between rival factions. The rule that mandamus will lie in favor of one having a prima facie title to office is very generally observed. Ellis v. Armstrong, 28 Okla. 311, 114 Pac. 327; Michell v. Carter, 31 Okla. 592, 122 Pac. 691; Jewitt v West, 33 Okla. 703, 127 Pac. 476; State ex rel. Love v. Smith, 43 Okla. 231, 142 Pac. 408, L. R. A. 1915-A, 832 and note; Ross v. Hunter, 53 Okla. 423, 157 Pac. 85. Mitchell v. Carter, supra, was a mandamus proceeding brought by an officer elected in a municipal election to require the turning over to him of the belongings of such office by an officer claiming to hold by virtue of his election under an old charter, the relator in the man-

damus proceedings holding a certificate of election by virtue of a municipal election held under the powers of such charter, and it was held that the respondent would not be permitted to contest the title or right of the relator to such office on the legal grounds of the invalidity of such municipal election, on account of the failure to hold a primary election pursuant to the primary election law passed by the Legislature to govern municipalities, or other irregularities in holding such election. Threadgill v. Cross, Secretary of State, 26 Okla. 403, 109 Pac 558, and State ex rel. Cruce, Governor, v. Cease, 28 Okla. 271, 114 Pac. 251, while involving somewhat different questions, may be looked to with profit by ministerial officers in determining their right to question the constitutionality or validity of acts of the Legislature. Thus it will be seen that the answer contained no sufficient defense, unless it be, for the reason contended for by respondent, that the statute, properly construed, requires sixty per cent. of all of the resident voters of the district, and not sixty per cent. of those voting at the election. This question will presently be considered. The defense set up by respondent, if authorized, would enable a public officer, charged with the performance of a plain ministerial duty, the enforcement of which was invoked by mandamus, to collaterally attack the sufficiehcy of the petition which he had himself theretofore approved and acted upon, and put in issue the validity of the election, the returns of which, as certified to him, made a prima facie showing in favor of the issue submitted at the election.

It is very generally held that certifying or declaring the result of an election is a ministerial duty which may be compelled by mandamus, (High's Extr. Legal Rem., secs. 55-60; Spelling on Inj. and Extr. Rem. sec. 62; 26 Cyc. 278; 18 R. C. L. 275); and this notwithstanding the refusal to act was on the ground of fraudulent voting (People v. Bell, 54 Hun, 567, 8 N. Y. Supp. 254, affirmed in 119 N. Y. 175, 23 N. E. 533; Hudson v. Slaughter, 70 Ala. 546; State v. County Judge, 7 Iowa, 186; State v. Monroe, 46 La. Ann. 1276, 15 So. 625), as mandamus is not the proper remedy for determining the result of a disputed election. Spelling on Inj. and Extr. Rem., secs. 52-57; High's Extr. Legal Rem., sec. 56-a. And so may be effectuated the statute prescribing that "it shall be the duty of the said county superintendent to appoint persons to fill all vacancies in the school board for each of the school districts," within the dissolved consolidated district. The appointment to fill such vacancies, which arise by operation of law, involves the

exercise of a duty enjoined by statute upon the county superintendent, and requires, when necessary, the use of the writ of mandamus to compel him to respect and obey the law. The consequences of a different doctrine, under a polity such as ours, where the right to administer the duties of government is predicated upon the exercise of the elective franchise by its people, are too serious to permit any doubt to be raised as to the power of the courts to compel the performance of official duties on the part of an officer charged with a purely ministerial duty. The wisdom of the electorate in dissolving the consolidated district was not subject to review, nor could it be annulled or made nugatory by the arbitrary acts of a ministerial officer,—the servant, rather than the master, of the legal voters of the district.

Does the statute under which the election was held require that sixty per cent. of the qualified voters of the consolidated district vote in favor of dissolution, or is it sufficient that sixty per cent. of the votes cast at the election be in favor of the dissolution of such district? The statute in this respect reads:

"If sixty (60) per cent. of the voters of such consolidated district at the election, held as provided by the first section of this act, shall vote to dissolve the consolidated school district, the clerk of said special election shall report such fact to the county superintendent of public instruction."

Clearly, the statute means that but sixty per cent. of those voting at the election need cast their ballots in favor of dissolution, as the language employed refers, not alone to the voters of the consolidated district, but to the voters of such district voting "at the election." In other words, as none but resident voters of the consolidated district could vote at the election, the statute should be interpreted as if it read: "Sixty (60) per cent. of the voters at the election." Section 26, art. 10, Constitution, declares that no county, town, township, school district, or other political corporation or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any one year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election to be held for that purpose. This provision of the Constitution was under consideration in Mason v. School District No. 72, 66 Oklahoma, 168 Pac. 798, wherein the contention was made that at the election provided for three-fifths of all of the electors residing in the school district were necessary to carry such election. The contention was not sustained, the court holding that it was necessary only to obtain

a majority of three-fifths of the legal voters voting at the election. See, also, North v. McMahan, 26 Okla. 502, 110 Pac. 1115; Faulk v. Board of Commissioners, 40 Okla. 705, 140 Pac. 777. The constitutional provision and the statute under consideration, from the standpoint of literary composition, bear a strong similitude; their legal requirements are identical.

The county superintendent was advised by the Attorney General of the state through the office of the State Superintendent of Public Instruction, prior to the institution of mandamus proceedings, that the statute required but sixty per cent. of those voting at the election, and not sixty per cent. of the entire voting population of the consolidated district to effect its dissolution. Not only this, but upon receipt of such advice, the superintendent promised to appoint the board members. This is shown by his letter to a citizen of Fort Cobb, under date of November 6, 1918. It is the duty of public officers, such as county superintendents, when in doubt as to the construction of an act of the Legislature, to follow, and not disregard, the advice of the Attorney General, charged with the duty of giving "opinions in writing upon all questions of law submitted to him  *  *  * by any state official, commission or department." (Rev. Laws, sec. 8059). This advice having been communicated to the State Superintendent of Public Instruction by the Attorney General, and transmitted by him to the county superintendent, correctly informed the county superintendent as to the validity of the election. Had it been heeded, and had the county superintendent also sought advise as to his right to otherwise attack the validity of the dissolution proceedings, it is not likely that this regrettable instance of setting at defiance the will of the electorate, with all of its evil consequences, would have arisen.

The refusal to perform a plain statutory duty, particularly where the act is purely ministerial and is intended to put into force and make effective the result of an election, is a very serious offense. As an evidence of the importance of this duty and how the law regards its violation, section 4918, Revised Laws, provides that the court may impose a fine, not exceeding $500.00, upon any public officer, body, or board, charged with the performance of any public duty specially enjoined by law, where such officers refuse or neglect, without just excuse, to perform such duty.

The first, second, third and fourth assignments of error urged by plaintiff in error are deserving of no consideration. in view of the record of the proceedings had at the trial.

The judgment awarding a peremptory writ of mandamus is affirmed.

KANE, HARRISON, JOHNSON and McNEILL, JJ., concur.