SPIERS et al. v. MAGNOLIA
PETROLEUM CO.

No. 34078.    Oct. 23, 1951.

Rehearing Denied May 27, 1952.

*244 P. 2d 852.*

Hall & Cotten, Oklahoma City, for plaintiff in error Claude C. Spiers.

Robinson, Shipp & Robertson, Oklahoma City, for plaintiffs in error A. Ben Chadwell, Chas. C. Peppers, and Harry W. Crosby.

Walace Hawkins and Raymond Myers, Dallas, Tex., and W. R. Wallace, Oklahoma City, for defendant in error.

GIBSON, J. This is an appeal from an order of the Corporation Commission wherein the Commission amended a former order providing for the unitization of the Chitwood Spiers Sand Area in an oil field in Grady county, Oklahoma.

The Commission had established what is known as the Chitwood Spiers Sand Unit by its order No. 21066 made and entered in its cause No. CD 1612 on May 29, 1948. On February 8, 1949, the Commission, after extended hearings, made and entered its order No. 22064 in the same cause holding that its former order creating the Unit should be amended by decreasing the area and by changing the basis of participation by the royalty owners from a surface-acreage basis to an acre-foot basis. This change affected not only the royalty owners' interest but the interest of the lessees as well.

In its petition to amend the former order Magnolia Petroleum Company, in part, alleges that extensive development had taken place since the entry of order 21066; that three wells had been drilled within the boundaries of the Unit in an attempt to discover production in the Spiers sand; that a study of the date obtained revealed that the pay zone of the Spiers sand unit was not as extensive as at first believed; that under 52 O. S. 1941 §286.5, only so much of the common source of supply as has been reasonably defined by actual drilling operations may be included within the area and said unit should be reduced to the area shown on an attached map, Exhibit A.

It was further proposed "that the new formula of participation shall be on an acre foot basis—that is, each tract shall have assigned to it that proportion of the unitized substances that the acre feet of sand under said tract bears to the total number of acre feet of sand under the entire unit."

Claude C. Spiers, a landowner, filed his written protest to said petition in which he attacked the constitutionality and validity of the Unitization Act, and further alleged that the amendments sought would be unfair, unjust and inequitable to him; that sufficient wells had not been drilled to show the necessity, expediency or equity of the same; that the proposed formula of participation was unfair, unjust and inequitable

and that the Commission had no jurisdiction to modify or change its former order.

A. Ben Chadwell and another royalty owner filed no formal pleading but they appeared and protested the proposed amended order and participated with their attorney in the proceedings.

Hereafter we shall refer to the petitioner as "Magnolia"; Claude C. Spiers, the protestant, as "Spiers"; and the appearing royalty owners as "Chadwell".

Spiers alone raises the question that the Unitization Act is illegal and that it violates provisions of the State and Federal Constitutions. The constitutionality of this Act was upheld by this court in Palmer Oil Corp. v. Phillips Petroleum Co., 204 Okla. 543, 231 P. 2d 997, and the decision in that case is controlling here. Spiers' contentions with reference to the constitutionality of the Act are denied.

The remaining paramount questions involved in this appeal are whether the Corporation Commission has the power under the Unitization Act, after hearing evidence, to diminish or reduce the area of a unit area and to change the participation factor after the unit and the method of participation has once been established by a Commission order.

If the Commission is vested with such powers to amend its order, then it is apparent, from our view of this record, that there was ample and sufficient evidence to sustain the amending order No. 22064. The decision of the Commission depended upon how it resolved conflicting evidence. Primarily the decision depended upon the weight of expert evidence by geologists and petroleum engineers. No others are qualified to advise the Commission or this court of the conditions and area of an oil sand two miles below the surface of the earth.

We say again that all experts testifying in this case were highly qualified in their respective fields. They differed in some of their conclusions drawn from the known facts and data revealed from various oil wells that had been drilled in the Chitwood Field. All experts were subjected to extensive examination and cross-examination. The Commission had the advantage of use of a blackboard whereon the experts demonstrated their theories and conclusions, and the full effect of impressionability on the trier of facts is not revealed by the typewritten record before us. The Commission itself, by its experience in various cases involving the conservation of natural resources, becomes somewhat expert in weighing the value of expert testimony. Where the decision of the Commission is not clearly against the weight of the evidence or is sustained by sufficient evidence, this court will not vacate the order nor will it substitute its opinion for that of the Commission. Peppers Refining Co. v. Corporation Commission, 198 Okla. 451, 179 P. 2d 899; Denver Producing & Refining Co. v. State, 199 Okla. 171, 184 P. 2d 961; Palmer Oil Corp. v. Phillips Petroleum Co., supra.

But has the Commission the power to amend its order in respects above stated? It is a question of the first impression with this court. In his brief Chadwell clearly states the issue when he avers that the Corporation Commission has no authority to reduce the size of a unit once created under the Unitization Act and that the area and the formula, having been fixed, it was not proper thereafter for the Commission to change either.

With reference to the fundamental reasons for the enactment of the Unitization Act, we appreciate the following statement in Chadwell's brief:

"On the theory that the greatest good to the greatest number provides a proper motive, and that the conservation of natural resources furnishes the authority, the Legislature passed this law which substitutes an interest in the whole property for an interest in the separate property previously owned by

the affected owners. It was a bold legislative step, and it was not taken by the Legislature until it had spent years digesting the concept of a common source of supply as one mechanical unit for the production of oil and gas. Nature does not provide proper underground restraining barriers which will prevent one man's wrongful production practices from affecting the whole reservoir. Further, the energy of the reservoir is a unit, and its most efficient use comes when employed as a unit. But this does not mean that a reservoir must be unitized when first discovered, nor that unitization is proper in every instance."

He then discusses certain sections of the Act, including section 11, which provides that in a proceeding in which an order is entered creating a unit, the Commission shall retain jurisdiction for the purpose of amending the plan of unitization from time to time whenever by reason of changed conditions, for good cause shown, it is made to appear that such amendment is necessary or proper.

He then quotes from section 12 that the unit area may be unitized with adjoining or contiguous portions of the same common source of supply and that the larger unit so created shall supersede such smaller unit or units.

It is then argued by counsel that since section 11 provides for amendment of the *plan,* it cannot be read to mean that the Commission retains jurisdiction for any other purpose. Also, since section 12 provides a procedure for amendment of an area by *enlarging* the area, it does not contain any language which authorizes the Commission to *decrease* the unit area.

From this position it is argued that whenever a statute enumerates powers, those not enumerated cannot be read into the statute and they invoke the maxim "expressio unius est exclusio alterius", as to construction of statutes. It is said that the grant of power to amend by enlarging the unit area being specifically given in the statute operates to exclude the power to diminish the area.

In support of their contention counsel for both appellants cite: Continental Casualty Co. v. United States, 314 U. S. 527, 62 S. Ct. 393; VanEaton v. Town of Sidney, 211 Iowa 986, 231 N. W. 475; Cabel v. City of Cottage Grove, 170 Ore. 256, 130 P. 2d 1013; St. Louis-San Francisco Ry. Co. v. McIntosh, Co. Treas., 103 Okla. 246, 229 P. 1064; Crawford on Statutory Construction, p. 334; Sutherland on Statutory Construction (3rd Ed.) vol. 2, pp. 412-423; 59 C. J. 984; Broaddus v. Board of County Commissioners, etc., 16 Okla. 473, 88 P. 250; Fenton v. Young Chevrolet Co., 191 Okla. 161, 127 P. 2d 813.

In view of our conclusions in this case these authorities are not controlling. In 59 C. J., p. 984, §582, cited above, the text writers say " . . . but the maxim should be applied only as a means of discovering the legislative intent and should never be permitted to defeat the plainly indicated purpose of the legislature. . . ."

The maxim "Expressio unius est exclusio alterius" is a rule of statutory construction. It is not a rule of substantive law. City of Lexington v. Edgerton, 289 Ky. 815, 159 S. W. 2d 1015.

We find the rule as to the application of the maxim to be well expressed as follows:

"The maxim 'expressio unius est exclusio alterius' that the mention of one thing in a statute implies exclusion of another thing is not of universal application but is to be applied only as an aid in arriving at intention and should never be followed to the extent of overriding a different intent of the Legislature." Bland v. Commissioner of Internal Revenue, 102 Fed. 2d 157.

In Ford v. United States, 273 U. S. 593, 47 S. Ct. 531, 71 L. Ed. 793, Chief Justice Taft quotes Lord Justice Lopes with approval:

"It (the maxim) is often a valuable servant, but a dangerous master to follow in the construction of statutes or documents. The 'exclusio' is often the result of inadvertence or accident, and the maxim ought not to be applied,

when its application, having regard to the subject-matter to which it is to be applied, leads to inconsistency or injustice."

The maxim is only one of the several rules applicable to the construction and interpretation of statutes.

The intent and purpose of the Legislature in the enactment of the statute must be ascertained and giving effect to the entire Act is essential.

"As the intention of the Legislature, embodied in a statute, is the law, the fundamental rule of construction, to which all other rules are subordinate, is that the court shall, by all aids available, ascertain and give effect, unless it is in conflict with constitutional provisions, or is inconsistent with the organic law of the state, to the intention or purpose of the Legislature as expressed in the statute." 59 C. J. 948, §568, citing Protest of Chicago, R. I. & P. Ry. Co., 137 Okla. 186, 279 P. 319, and other Oklahoma cases.

In construing a statute, the whole must be considered and all parts given their obviously intended meaning, and no parts stricken down, unless in irreconcilable conflict with the remainder. Fetzer v. Johnson, 15 Fed. 2d 145; Oklahoma Natural Gas Co. v. State ex rel., 187 Okla. 164, 101 P. 2d 793.

The Legislature's object and purpose is expressed in section 1 of the Act:

"The Legislature finds and determines that it is desirable and necessary, under the circumstances and for the purposes hereinafter set out, to authorize and provide for unitized management, operation and further development of the oil and gas properties to which this Act is applicable, to the end that a greater ultimate recovery of oil and gas may be had therefrom, waste prevented, and the correlative rights of the owners in a fuller and more beneficial enjoyment of the oil and gas rights, protected."

From a study of the entire Act one is convinced that the Legislature intended to conserve natural resources; to provide for a unitization of development of a common source of supply of oil and gas; to protect the rights of the owners of that common source of supply and to entrust to the Commission, under the police powers, the creation, supervision and control of the unitization when perfected. The Commission is specifically mentioned in nine of the seventeen sections of the Act. After all things provided in the Act shall have been undertaken or performed, section 11 provides that the Commission "shall retain jurisdiction thereof and of all parties in interest for the purpose of amending the plan of unitization from time to time whenever by reason of changed conditions or otherwise for good cause shown it is made to appear that such amendment is necessary or proper."

In their briefs appellants emphasize "amending the plan of unitization", and say that the section cannot be read to mean that the Commission retained jurisdiction for any other purpose and that the Legislature did not intend that once such unit is created that it could thereafter be changed except to enlarge it as provided in section 12. They then quote the maxim.

We cannot agree with that strict, narrow construction as to the legislative intent. To so hold would defeat the purpose of section 11 and other sections of the Act. Section 3 vests the Commission with jurisdiction, power and authority to supervise the administration of the Act. Section 4 provides the procedure for the creation of the unit and adoption of the plan of unitization thereof. Section 5 provides that "The order of the Commission shall define the area of the common source of supply or portion thereof to be included within the unit area and prescribe with reasonable detail the plan of unitization applicable thereto." We note that this grant of powers is in the conjunctive.

When vested with such broad powers as conferred by this Act, if the Commission shall erroneously define the area of the common source of supply and subsequent actual drilling shall es-

tablish the error as a fact, can it be that the Commission is without power to amend and correct its admittedly erroneous finding? If the finding of the first order was that the land of one owner was within the producing sand area but subsequent development proves that his land is outside the producing sand area, is he to be entitled to participate in the production from the common source of supply when he owns no part of the common source of supply? Is the property of A to be taken from him and given to B who has no title to it? Is there no remedy for such injustice or inequities? To hold that the Commission, upon due proof as provided in the Act, has the power to correct its order by amendment provided in section 11, is to grant relief from such inequities between landowners. To hold to the contrary defeats the legislative declaration in section 1 as to the protection of the correlative rights of the owners. It denies the jurisdiction of the Commission to supervise the administration of the Act as provided in section 3.

To say that a plan of unitization can be amended and that the defining or outlining of a unit area cannot be amended is inconsistent with the purposes of the Act. The maxim cannot be applied if its application would defeat the purposes of the Act. City of New York v. Davis, 7 Fed. 2d 566.

Defining a unit area of producing land is an essential and necessary part of the plan itself. Without such unit area being outlined there is nothing upon which the plan can operate. The hatched map attached to the plan is not a thing separate and apart from the plan. It is merely evidence of the extent of the unit area reduced to picture form.

We do not conceive that section 11 is inconsistent or in conflict with section 12. It would seem that under the first ten sections of the Act complete procedure was provided for the creation, operation and supervision of a single unit. It was provided in section 5 that each unit or unit area should be limited to all or a portion of a single source of supply. The question then arose as to what should be done if it should later develop that an adjoining or contiguous area should prove to be productive from the same common source of supply. Section 12 provided that, following the same procedure as in the creation of the first unit, another unit could be formed including both areas as a single unit. Section 11 providing for the retention of jurisdiction by the Commission for amendment of the plan of unitization by its terms is made applicable to any proceeding under the Act, and hence would apply to a unit created under section 12.

If the Act is to be construed in its entirety, and if one of the declared objects of the Legislature was to protect the "correlative rights of the owners in a fuller and more beneficial enjoyment of the oil and gas rights", such object cannot obtain if some owners with no oil and gas under their lands are to participate in the proceeds from a common source of supply which is not under their land but is under the land of other owners. It is significant that more than 90 per cent of the royalty owners of the unit defined in the first order signed an agreement to the unitization plan of the amending order before us while three owners protested.

We hold that the statutory authority given to amend the unitization plan is authority for the Commission to amend its orders by reducing or enlarging the unit area which is an integral part of the plan itself.

Order affirmed.

HALLEY, V. C. J., and CORN, JOHNSON, and BINGAMAN, JJ., concur.