637 P.2d 1251 (1981)
The AETNA CASUALTY AND SURETY COMPANY; the Home Insurance Company; and Insurance Services Office of Oklahoma, Appellants,
v.
The STATE BOARD FOR PROPERTY AND CASUALTY RATES, Appellee.
Nos. 53728, 53733 and 53734.
Supreme Court of Oklahoma.
December 15, 1981.
*1253 Proctor, Fleming & Speck By Richard A. Proctor and Micheal L. Darrah, Oklahoma City, for appellants.
Jan Eric Cartwright, Atty. Gen., Richard F. Berger, Asst. Atty. Gen., Oklahoma City, for appellee.
Edwin F. Garrison of Looney, Nichols, Johnson & Hayes, Oklahoma City, for appellant, Insurance Services Office of Oklahoma.
*1252 SIMMS, Justice:
Appellants Aetna Casualty and Surety Company, The Home Insurance Company, and Insurance Services Office of Oklahoma appeal from an order issued by the Oklahoma State Board for Property and Casualty Rates on May 2, 1979.[1] The order revoked and disapproved various policy and endorsement forms because they violated 36 O.S. 1971, § 6092.
Title 36 O.S. 1971, § 6092 reads as follows:
"No provision in an automobile liability policy or endorsement for such coverage effective in this state issued by an insurer on and after the effective date of this Act which grants the insurer the right of subrogation for payment of benefits under the expenses for the medical services coverage portion of the policy, to a named insured under the policy, or to any relative of the named insured who is a member of the named insured's household shall be valid and enforceable; provided, that such policy or endorsement may provide for said insurer's rights of subrogation and setoff upon such payments to any person who is not a named insured under the policy or a relative of the named insured who is a member of the named insured's household." (emphasis added)
Appellee State Board for Property and Casualty Rates [hereafter the Board] made reference to two Attorney General opinions, Nos. 78-164 and 78-225, in its conclusions of law. In construing § 6092, the opinions say in pertinent part:
"... Under 36 O.S. 1971, Sec. 6092, a provision in an automobile liability insurance policy which provides the insurer with the right of setoff or subrogation with regard to medical payments made thereunder on behalf of the named insured, or any relative of the named insured who is a member of the named insured's household, in invalid and unenforceable; however, such policy may provide a right of setoff or subrogation to the insurer with regard to medical payments made thereunder on behalf of any person who is not the named insured or a relative of the named insured who is a member of the named insured's household." 78-164.
"Under 36 O.S. 1971, Sec. 6092, a provision in an automobile liability insurance policy which provides the insurer with the right of setoff or subrogation either by way of an excess coverage exclusion or otherwise, with regard to medical payments made thereunder on behalf of the named insured or any relative of the named insured who is also a member of the named insured's household is invalid and unenforceable." 78-225.
Appellant's appeal from the following conclusions of law made by the Board:
I. The members of the Board are duty bound to follow the Attorney General's interpretation of the law.
II. 36 O.S. 1971, § 6092 prohibits any provision in an Automobile Liability Policy which makes the medical coverage afforded to the named insured or resident relative subject to subrogation, set-off, excess coverage, or any other condition which reduces recovery by the existence of other benefits.
III. 36 O.S. 1971, § 6092 prohibits any provision in the Uninsured Motorist Insurance Form which makes medical coverage *1254 to the named insured or resident relative subject to excess clauses, or gives the insurer the right of subrogation or sets off recovery.
IV. The policy provisions reviewed by the Board are contrary to 36 O.S. 1971, § 3611[2] and are ambiguous and deceptive according to § 6092.

I.
Both parties agree that the duty of the Attorney General to write opinions is prescribed by 74 O.S. 1971, § 18b(e):
"To give his opinion in writing upon all questions of law submitted to him by the legislature or either branch thereof, or by any state officer, board, commission or department, provided that the Attorney General shall not furnish opinions to any but County Attorneys, the legislature or either branch thereof, or any other state official, board, commission or department, and to them only upon matters in which they are officially interested."
Both parties also agree that under the law in Oklahoma when doubt exists concerning the construction of a statute, it is the duty of public officers to follow the advice of the Attorney General. Rasure v. Sparks, 75 Okl. 181, 183 P. 495 (1919). The final construction of a statute rests with the courts and the opinion of the Attorney General is not controlling, although it is given great respect. State ex rel. Clifton v. Reeser, Okl., 543 P.2d 1379 (1975). In other words, it is the duty of public officers to follow Attorney General's opinions until relieved of such duty by a court of competent jurisdiction. Pan American Petroleum Corp. v. Board of Tax-Roll Corrections of Tulsa County, Okl., 510 P.2d 680 (1973).
Appellants base the assertion that these general rules regarding Attorney General's opinions do not apply to the instant case on two theories: Either, (1) that the opinions followed by the Board were invalid because a state senator's requests for them allegedly were not pursuant to a matter in which the senator had an official interest (he was allegedly pursuing the question to assist a personal client); or (2) even if the Attorney General did not exceed his authority in responding to the senator's inquiries, the necessary "well-founded doubt or uncertainty" required by Rasure v. Sparks, supra, did not exist. Therefore, the Board was not duty bound to follow 78-164 and 78-225.
We find these contentions to be without merit. The real issue on appeal, as appellee stresses, is not the correctness of the Attorney General's opinions, but the correctness of the Board's order of May 2, 1979. It is that order, not the opinions on which it is based, which is the subject of this appeal. An opinion of the Attorney General is not a judicial order[3], and is not directly appealable.[4]
Appellants present no authority (or even cogent argument) in support of the notion that this Court should in some fashion judge the motivation of a state senator's request for an Attorney General's opinion, and declare that this motivation somehow alters the effect of the resulting opinion. This we decline to do.
As directed by statute, the Attorney General gave his opinion on a question submitted by one authorized to ask for it. This issue was obviously one of doubt and the general rule is applicable: it is the duty of the Insurance Board to follow the Attorney General's construction of a statute until relieved of doing so by a court of competent jurisdiction.

*1255 II.
Appellants ultimately concede that § 6092 expressly limits subrogation: "No provision ... which grants the insurer the right of subrogation ... for the medical services coverage portion of the policy, to a named insured under the policy, or to any relative of the named insured who is a member of the ... household shall be valid and enforceable ..." Despite this admission, appellants argue that subrogation clauses do not reduce or modify the insurer's liability, but simply provide a means by which the insurer can recover monies paid to the insured from the individual who caused the insured's injuries.
An inquiry into the policy behind the limitation of subrogation in the medical payment provision of an automobile liability policy is instructive. Appleman, Insurance Law and Practice, § 1675 states that generally subrogation serves the purpose of (1) placing the ultimate loss on the wrongdoer and (2) preventing the insured from recovering both from the insurer and the wrongdoer. Subrogation rights are commonly allowed when the insured sustains a fixed financial loss.
In personal insurance contracts[5] however, the exact loss is never totally capable of ascertainment, and therefore the same reasons militating against double recovery do not obtain. The general rule, therefore, is that the insurer is not subrogated to the insured's right or the beneficiary's rights under contract of personal injury.
While conceding the subrogation limitation, appellants urge that set-off may be applied to the named insured/resident relative because it is not explicitly mentioned in the first section of § 6092. The statute is divided into two sections. The first section deals with the insured/resident relative and mentions only subrogation; the second applies to all other persons and mentions both subrogation and set-off. In light of this, appellants believe the Board's ruling should have been limited to the statutory language prohibiting subrogation against the insured/resident relative. Appellants would have us adhere to the rule set out in Spiers v. Magnolia Petroleum Co., 206 Okl. 510, 244 P.2d 852 (1952) that the mention of one thing implies exclusion of another; therefore, the legislature did not intend to prohibit set-off clauses. Spiers also sets out the rule, however, that the maxim of statutory construction adopted by petitioners, "the mention of one thing excludes the other," is not of automatic or universal application and should be subordinated to legislative intent.
Appellee points to the title of the statute to assist in gleaning legislative intent. In Irwin v. Irwin, Okl., 433 P.2d 931, 934 (1965) the Court stated:
"If the meaning of a portion of the statutory text is uncertain we may resort to the title of the act which serves as a valuable aid in interpreting the body and in determining legislative intent. This is especially proper in Oklahoma because our Constitution requires that the purpose of an act be clearly expressed in its title. [citations omitted]"
The title of the Act, O.S.L. 1971, Ch. 127, p. 391 shows that the intent of the legislature was to limit both subrogation and set-off:

*1256 "An Act relating to insurance; providing certain limitations upon the insurer's rights of subrogation and set-off upon payment of benefits under medical services coverage provisions in automobile liability policies or endorsements thereto; directing codification; and declaring an emergency." (emphasis supplied)
If set-off were allowed against the named insured/resident relative, the policy reason behind the statute  the limitation of subrogation and set-off  would be negated.
Case law is not particularly helpful on this issue since most of it deals with the question prior to the passage of § 6092. It does reveal a policy decision to limit subrogation and set-off, on the theory that such clauses were the insurer's indirect attempt to become the assignee of a tort cause of action, something the insurer could not do directly and thus was a violation of the real party in interest limitation of 12 O.S. 1971, § 221.[6]Hardware Dealers Mutual Fire Ins. Co. v. Krueger, Okl., 486 P.2d 737 (1971)[7].
The intent of the legislature to prohibit set-off as to the named insured and resident relative can be ascertained from a reading of 36 O.S. 1971, § 6092 as a whole. A legislative intent to prohibit excess clauses, however, is nowhere apparent.[8] The allowance of excess clauses is subject to the general rule set out in Keel v. MFA Insurance Co., Okl., 553 P.2d 153 (1976) that it is unjust to permit the insurer to avoid liability by asserting other insurance clauses denying the insured from receiving that for which he paid a premium. Appleman states: "The cardinal rule in automobile liability insurance cases is that, regardless of the method of apportionment used, the insured should not receive less coverage than if he were protected by only one of the policies in question." § 483.
36 O.S. 1971, § 6092 does not attempt to describe what type of coverage a carrier may provide, it deals solely with what rights the policy may provide when the insurance company pays the medical expenses and the insured recovers from a tortfeasor. An excess clause will not have the effect of taking credit for recoveries made by the injured party from a third party tortfeasor; it is excess only as to other available medical payments coverages provided by insurance companies.
Under policies with excess provisions, the insured may save some premiums by purchasing a reduced rate policy, thus foregoing a double recovery, or the insured may purchase a standard policy at a higher premium which does not contain an excess provision.
"There can be no doubt that when a policy provides coverage for the excess over primary insurance to a specifically stated amount only, such provision must be given effect. Such insurance fulfills a special need for excess coverage at a special lower premium." (emphasis supplied) Peerless Casualty Co. v. Continental Casualty Co., 144 Cal. App.2d 617, 301 P.2d 602 (1956).
Accident and health policies often contain excess coverage provisions to prevent the insured from profiting from an illness or injury by collecting benefits more than once. Christian v. Metropolitan Life Ins. Co., Okl., 566 P.2d 445 (1977).
In light of case law allowing excess clauses and subject to the limitation of *1257 Keel, supra, that excess clauses will not be used to prevent the insured from stacking, i.e., recovering the actual amount of his damages which are within the limits of the policies, 36 O.S. 1971, § 6092 cannot be construed to prohibit excess clauses in medical payment provisions.

III.
36 O.S. 1971, § 6092 applies to medical payment provisions in all automobile liability policies and stipulates that "No provision in an automobile liability policy or endorsement" shall allow subrogation or set-off as to the named insured or resident relative. The broad language of § 6092, coupled with the narrow scope of its subject matter, i.e., medical payment provisions, indicates legislative intent that 36 O.S. 1971, § 3636 (Uninsured Motorist Insurance) follow its dictates. Express language in § 3636 says "The uninsured motorist coverage shall be upon a form approved by the State Board for Property and Casualty Rates as otherwise provided in the Insurance Code."
Although there is language in § 3636 which suggests the insurer's right to subrogation[9], we hold that § 3636 must be construed to conform to § 6092 under the general rule of statutory construction that the specific controls the general.[10] The legislature has indicated by the enactment of § 6092 that medical payment coverage is to be afforded special treatment; that special treatment should also be given in regards to such coverage in Uninsured Motorist provisions. This same logic applies to set-off, though it specifically is prohibited under 36 O.S. 1971, § 3636.
"Provided, however, with respect to payments made by reason of the coverage described in subsection (C) above, the Insurer making such payment shall not be entitled to any right of recovery against such tort-feasor in excess of the proceeds recovered from the assets of the insolvent insurer of said tort-feasor. Provided further, that any payment made by the Insured tort-feasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage." (emphasis added)

IV.
Under the foregoing construction of 36 O.S. 1971, § 6092, medical payment provisions allowing subrogation and set-off as to the named insured or resident relative in any automobile liability policy, including uninsured motorist coverage, is in violation of § 6092. Such provisions are ambiguous and deceptive in that they purport to offer coverage for medical expenses when in fact such coverage is reduced or eliminated by conditions in the policies.
Therefore, we affirm the ruling that the members of the Board are duty bound to follow the Attorney General's interpretation of the law. We affirm only in part the Board's construction of 36 O.S. 1971, § 6092, and hold that § 6092 prohibits subrogation and set-off in medical payment provisions in any automobile liability policy, including Uninsured Motorist Coverage. § 6092 does not indicate a legislative intent to prohibit excess clauses.
ORDER OF BOARD FOR PROPERTY AND CASUALTY RATES IS AFFIRMED IN PART AND REVERSED IN PART.
IRWIN, C.J., BARNES, V.C.J., and HODGES, LAVENDER, DOOLIN and HARGRAVE, JJ., concur.
OPALA, J., dissents.
NOTES
[1] 36 O.S. 1971, § 347 provides that any party in interest may directly appeal decisions of the Insurance Board to the Supreme Court.
[2] § 3611 provides in part that the Insurance Board shall disapprove a policy if (1) it is in violation of the insurance code; (2) if it contains or incorporates by reference any inconsistent, ambiguous or misleading clauses, or exceptions and conditions which deceptively affect the risks purported to be assumed in the coverage of the contract; (3) if it has any title, heading or other indication of its provisions which is misleading.
[3] Okl.Const., Art. 6, § 1.
[4] 12 O.S. 1971, § 951; 12 O.S. 1971, Ch. 15, App. 2, Rule 1.10.
[5] Appleman, Insurance Law and Practice, § 1, distinguishes personal insurance, i.e., insurance upon the person of an individual or group of individuals, from other types of insurance such as property, casualty and commercial: "All of these other insurances in some way involve a res different from the person of the policyholder. In personal insurance, however, that is the sole object of concern, and liability of the insurer arises, ordinarily, upon the insured's death or, perhaps, his sickness, or disability resulting from accident."

Medical payment provisions are considered akin to personal accident policies, since such recovery is completely independent of liability on the part of the insured. Such provisions obligate the insurer to pay medical expenses directly to persons named, irrespective of negligence. An additional premium is collected on medical payment provisions.
[6] § 221 provides that every action must be prosecuted in the name of the real party in interest, except as otherwise provided, but it shall not be deemed to authorize the assignment of a thing in action, not arising out of contract.
[7] Aetna Casualty and Surety Co. v. Associated Transports, Okl., 512 P.2d 137 (1973) overruled the holding that § 221 prohibits the transfer of a cause of action by subrogation; but though the theory behind the restriction of subrogation may be changed, § 6092 codifies the desire of the legislature to limit its use.
[8] An excess or other insurance clause provides that the insurer's liability shall be only the amount by which the loss exceeds the coverage of all other valid and collectible insurance, up to the limits of the excess policy.
[9] "(E) In the event of payment to any person under the coverage required in this section and subject to the terms and conditions of such coverage, the Insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.
[10] Beidleman v. Belford, Okl., 525 P.2d 649 (1974).