**PUBLIC SERVICE COMPANY OF OKLAHOMA, Appellant,**

v.

**STATE of Oklahoma, ex rel. CORPORATION COMMISSION, and Robert Henry, Attorney General of the State of Oklahoma, and Northeast Oklahoma Electric Cooperative, Inc., Appellees.**

No. 75031.

Supreme Court of Oklahoma.

Nov. 24, 1992.

White, Coffey, Galt & Fite, P.C., Jay M. Galt, Robert V. Varnum and J. David Jacobson, Oklahoma City, for appellants.

Logan, Lowry, Johnston, West, McGeady, Curnutte & Logan, J. Duke Logan, Tami D. Mickelson, Vinita, for appellee Northeast Oklahoma Elect. Co-op., Inc.

Lindil C. Fowler, Jr., Maribeth D. Snapp, Lu Willis, Oklahoma City, for appellee Oklahoma, Corp. Com'n.

WATT, Justice:

## FACTS

On April 17, 1973, Public Service Company of Oklahoma (PSO) and Northeastern Oklahoma Electric Cooperative, Inc. (NEO)

entered a Territorial Boundary Agreement pursuant to the Retail Electric Supplier Certified Territory Act, 17 O.S.1971 § 158.21 et seq. PSO and NEO agreed to allocate between themselves certain territories in northeastern Oklahoma. Of import here, the two electric suppliers allocated to NEO the rural area outside the incorporated township of Chelsea, Oklahoma. Under 17 O.S. § 158.26, the Oklahoma Corporation Commission approved the agreement in Order No. 97555 on May 15, 1973.

The municipally-owned Chelsea electric system provided electric service in and around the corporate limits of the Town of Chelsea for several years. Chelsea was exempt from Commission regulation because incorporated township areas and municipal electric corporations are specifically exempt from regulation under the Act. 17 O.S. §§ 158.23, 158.28. On May 2, 1989, Chelsea sold all of its electric distribution facilities, both inside and outside the incorporated township area, to PSO. Prior to the sale, Chelsea had been the only facility supplying electricity to the disputed territory. PSO immediately began serving the same electric consumers previously served by the Chelsea system with the same facilities. However, NEO maintained that the rural area around Chelsea was in its certified territory and proceeded to build lines next to, and in duplication of, PSO's newly acquired lines.

## PROCEDURAL HISTORY

In a proceeding before the Commission, PSO sought to prevent NEO from constructing or energizing electric distribution lines in wasteful duplication of the previously unregulated municipal electric lines that PSO had just purchased. PSO asserted that it had the right to serve those accounts outside Chelsea's corporate limits because it had lawfully purchased those facilities and accounts from Chelsea. If the area in question was determined to be within NEO's certified territory, PSO urged the Commission to recertify the area to PSO. Recertification would have allowed PSO not only to serve the existing accounts, but also to extend service to new

customers in an area equidistant between its newly purchased distribution lines and those of NEO as they existed on May 2, 1989. *See* 17 O.S. § 158.24(B).

The Commission, in Cause No. PUD 000720, Order No. 344325, held that the disputed area outside Chelsea's corporate limits is and has always been part of NEO's certified territory for retail electric services. The Commission further ruled that it had authority under the Act to recertify territories only under two limited circumstances: (1) Pursuant to § 158.25(C) when the service being provided by a retail electric supplier to the electric consuming facility is not adequate and is not likely to be made adequate, and (2) under § 158.26 when two electric suppliers agree to recertification. Because neither circumstance existed, the Commission decided that it was without authority to recertify the territory.

The Commission's order also directed the parties to commence negotiations for the purchase by NEO, at a fair price, of the electric facilities owned by PSO in the area in question outside the corporate limits of Chelsea. The Commission further ordered NEO to refrain from building any new facilities that would result in wasteful duplication of distribution facilities in the disputed area, pending purchase by NEO of the PSO facilities. The Commission later issued a second order, Order No. 344905, to clarify that it was not *requiring* PSO to sell the facilities at issue to NEO, only that the parties *negotiate* a sale. If no agreement could be reached, PSO was ordered to promptly disconnect service in NEO's certified territory upon NEO building facilities to serve those customers.

PSO appealed the Commission's orders and this Court granted appellant's request to retain the case.

## ISSUE

The issue presented in this appeal is whether the Retail Electric Supplier Certified Territory Act grants the Corporation Commission authority to recertify a territory in situations other than those contem-

plated by §§ 158.25(C) and 158.26.[1] We answer this question in the affirmative and remand this cause to the Commission for further proceedings.[2]

### DISCUSSION

■ Appellant asserts that the Commission's narrow interpretation of its authority to recertify a territory is contrary to the explicit language of the Act and contradicts its stated purpose. We agree. Initially, we reiterate that the fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed in a statute. *Ledbetter v. Oklahoma Bev. Laws Enforcement Comm'n,* 764 P.2d 172, 179 (Okla.1988). In so doing, "relevant provisions must be considered together, where possible, to give force and effect to each other." *Id.*

The purpose of the Retail Electric Supplier Certified Territory Act, as set forth in 17 O.S. § 158.23, provides:

It is hereby declared to be in the public interest that, in order to encourage the orderly development of coordinated statewide retail electric service, to avoid wasteful duplication of distribution facilities, to avoid unnecessary encumbering of the landscape of the State of Oklahoma, to prevent the waste of materials and natural resources, for the public convenience and necessity and to minimize disputes between retail electric suppliers which may result in inconvenience, diminished efficiency and higher costs in serving the consumer, the state be divided into geographical areas, establishing the unincorporated areas within which each retail electric supplier is to provide the retail electric service as provided in this act.

Regarding intent, the Legislature has clearly and unequivocally declared that the

provisions of the Act "shall be construed liberally." 17 O.S. § 158.31.

■ As appellees correctly note, the Act does not expressly authorize the Commission to recertify a territory. Although §§ 158.25(C) and 158.26 clearly confer upon the Commission power to certify territorial boundaries, the word "recertify" does not appear in the text of the Act. The Act does, however, grant the Commission general supervisory authority over the entities governed thereby. Such authority includes the power to prescribe rules, requirements and regulations affecting the services, operation, management and conduct of the regulated businesses. 17 O.S. § 158.27(A). The Act further bestows upon the Commission jurisdiction to enforce compliance with the Act and to exercise all powers "[t]herein or otherwise granted to the Commission." 17 O.S. § 158.27(B). The power to enforce compliance with the Act must necessarily include the power, within certain limitations, to further the Act's stated purposes.

This Court addressed an analogous issue in *Spiers v. Magnolia Petroleum Co.,* 206 Okl. 510, 244 P.2d 852 (1952), where we considered the power of the Corporation Commission under the Unitization Act, 52 O.S.Supp.1947 § 286.1 et seq. There, the appellants asserted that the Commission had no authority under the Unitization Act to reduce the size of an oil and gas unit once it was created under the Act. Although the Act specifically authorized the enlargement of a unit area, it did not contain any language empowering the Commission to decrease a unit area.

In rejecting the appellants' argument, this Court decreed that the powers of the Commission must be broadly interpreted consistent with the purpose of the statute. We began our analysis by examining the

---

1. In approving the Territorial Boundary Agreement between PSO and NEO, the Commission entered an order pursuant to the Act. That administrative order serves as the basis for the present action. Therefore, jurisdiction to resolve this dispute properly lies with the Commission and we limit our decision to delineating the powers of the Commission under the Act. Accordingly, we need not express any opinion

regarding the applicability and effect of contract law to the facts of this case.

2. Because we reverse the Commission's ruling regarding its recertification powers, we need not address appellant's remaining allegations of error.

Act as a whole. Then, after specifically noting the Act's stated purpose and the Commission's explicit authority to supervise the administration of the Act, we concluded that the Commission was vested with authority to decrease the size of a unit area.

The instant case presents an issue and fact situation comparable to those we considered in *Spiers*. The Certified Territory Act confers upon the Commission supervisory power to carry out and effectuate the purposes of the Act. The Commission has the responsibility to safeguard against unnecessary duplication of distribution facilities and encumbering of the landscape, to prevent the waste of materials and natural resources, and to minimize costs to consumers. Reading the statute as a whole, and giving it a liberal construction as specifically directed by the Legislature, we conclude that the Commission must have the authority to modify territorial boundaries consistent with and in furtherance of the Act's expressed purposes.

We also find persuasive a recent decision from the Supreme Court of Florida concerning a similar matter. In *Public Service Comm'n v. Fuller*, 551 So.2d 1210 (Fla.1989), the City of Homestead and the Florida Power and Light Company entered a territorial agreement that described the geographic areas to which each would provide electric utilities service. The agreement was approved by the Florida Public Service Commission (PSC) pursuant to Fla. Stat. § 366.01 et seq., Florida's equivalent to Oklahoma's Certified Territory Act. Homestead thereafter sought modification of the agreement in state court.

In holding that the PSC has exclusive jurisdiction over territorial agreements, the court reiterated that the PSC has authority to modify a previously issued order approving a service area agreement, although such power was not expressly set forth in the Florida statute:

The subject matter of the order [approving the territorial agreement] is within the particular expertise of the PSC, which has the responsibility of avoiding the uneconomic duplication of facilities and the duty to consider the impact of such decisions on the planning, development, and maintenance of a coordinated electric power grid throughout the state.... The PSC must have the authority to modify or terminate this type of order so that it may carry out its express statutory purpose.

*Fuller*, 551 So.2d at 1212. *See also Owen County Rural Electric Coop. Corp. v. Public Service Comm'n of Kentucky*, 689 S.W.2d 599 (Ky.App.1985), which reached a like conclusion in interpreting a statute (Ky.Rev.Stat. § 278.010 et seq.) markedly similar to the Oklahoma Act.

■ In reaching the above conclusion, we specifically reject the appellees' argument that the inclusion of §§ 158.25(C) and 158.26 in the Act demonstrated a legislative intention to limit recertification to situations covered by those provisions. Such an interpretation would be in direct conflict with § 158.31, which provides that "[t]he enumeration of any object, purpose, power, manner, method or thing [in the Act] shall not be deemed to exclude like or similar objects, purposes, powers, manners, methods or things." Furthermore, the maxim "expressio unius est exclusio alterius," that the mention of one thing in a statute impliedly excludes another thing, is not of universal application. The maxim is to be applied only as an aid in arriving at intention and should never be followed to the extent of overriding a different legislative intent. *Hardesty v. Andro Corporation–Webster Division*, 555 P.2d 1030, 1036 (Okla.1976); *Spiers, Id.*, 244 P.2d at 856. Section 158.31 clearly demonstrates that the Legislature did not intend for recertifications to be limited to only those situations covered under §§ 158.25(C) and 158.-26.

■ We also reject PSO's argument that recertification is *mandated* because it has gained some vested property right to serve the disputed territory by virtue of its purchase from Chelsea. Should the Commission, under appropriate factors, determine that recertification is unwarranted, no vested right would be impaired. This is so because PSO and the disputed territory were *at the time of purchase* subject to the continuing authority and jurisdiction of

the Commission to recertify the disputed territory under the police power of the state. This power cannot be circumvented by contract and the authority of the Commission to recertify or not recertify consistent with the purposes of the Act were, as the law of this state, a part of the purchase agreement. *Baker v. Public Service Co. of Oklahoma,* 606 P.2d 567, 571–72 (Okla.1980); *Southern Union Gas Co. v. Texas County Irrigation and Water Resources Ass'n, Inc.,* 564 P.2d 1004, 1007 (Okla.1977).

### CONCLUSION

We conclude that the Retail Electric Supplier Certified Territory Act grants the Corporation Commission authority to alter certified territory boundaries if doing so would further the purposes of the Act. Accordingly, we hold that the Commission erred in deciding that it was without authority to recertify a territory under circumstances other than those contemplated by §§ 158.25(C) and 158.26. Wasteful duplication of facilities, materials, natural resources and service is what the Act was intended to minimize. The Commission's authority must extend beyond the limited situations envisioned by §§ 158.25(C) and 158.26 to include the power to effectuate the purposes set forth in the Act. Our ruling today is limited to our decision that the Commission has jurisdiction to recertify territorial boundaries under the Act. We express no opinion regarding the merits of appellant's recertification request under the facts of this case. That is a matter within the Commission's area of expertise, which it must decide. Commission Orders Nos. 344325 and 344905 are therefore REVERSED and this matter is REMANDED for further proceedings consistent with this Opinion.

OPALA, C.J., and LAVENDER, SIMMS, HARGRAVE and SUMMERS, JJ., concur.

KAUGER, J., concurs in result.

ALMA WILSON, J., dissents.