# Lexington Tel. Co. v. Public Service Commission et al.

October 7, 1949.
Rehearing denied December 16, 1949.

Louis Cox, Ben L. Kessinger and Harbison, Kessinger, Lisle & Bush for appellant.

A. E. Funk, Attorney General, J. Gardner Ashcraft, Assistant Attorney General, Leer Buckley, J. E. Marks, Strother Kiser and David L. Thornton for appellee.

JUDGE LATIMER—Reversing.

On October 30, 1947, the Lexington Telephone Company filed notice with the Public Service Commission of its intent to increase its local rates. That body, which was created in 1934, has jurisdiction over the rates and services of private utility companies. Chapter 278, KRS. The proposed rates were to become effective on November 21, 1947, and were instituted on that date upon the posting of a bond by the Company guaranteeing a refund to the subscribers in the event that any or all of the increase should be denied. Among the parties filing protests to the increased rates were the City of Lexington, the City of Versailles, and the City of Midway. The City of Lexington asked that the Company's rates be decreased because of the poor service being rendered by the Company. After a lengthy hearing on the proposition, the Commission entered an order on July 15, 1948, denying the Company any increase in rates. The Company appealed immediately to the Franklin Circuit Court. The appeal now before us is from a judgment of that Court approving the Commission's order.

Sections KRS 278.410 to 278.450 set forth the manner in which appeals may be taken from rulings of the Commission. The first paragraph of KRS 278.410 provides: "(1) Any party to a proceeding before the commission or any utility affected by an order of the commission may, within twenty days after being served with the order, or within twenty days after his application for rehearing has been denied by failure of the commission to act, or within twenty days after being served with the final order on rehearing, when a rehearing has been granted, bring an action against the commission in the Franklin circuit court or any other court of competent jurisdiction, to vacate or set aside the order or determination on the ground that it is unlawful or unreasonable."

KRS 278.430, relating to the burden of proof, reads: "In all trials, actions or proceedings arising under the preceding provisions of this chapter or growing out of the exercise of the authority or powers granted to the commission, the party seeking to set aside any determination, requirement, direction or order of the commission shall have the burden of proof to show by clear and

satisfactory evidence that the determination, requirement, direction or order is unreasonable, or unlawful.''

It is apparent from these sections that an order of the Commission may be set aside on the ground that it is unlawful or unreasonable if clear and satisfactory evidence to that effect is presented. The Company is contending that the Commission's order is both unlawful and unreasonable.

Since the enactment of the Public Service Act of 1934, this Court has never been called upon to review a rate case in the true sense of that term. The present case is the nearest approach to such a case. However, the courts of other states, as well as the Supreme Court of the United States, have been called upon frequently to decide questions relating to the regulation and control of rates of private utility companies under the charges that the rulings of the regulatory bodies were either unlawful or unreasonable. 43 Am. Jur., Public Utilities and Service, Section 10. See also Ohio Bell Telephone Company v. Public Utilities Commission of Ohio, 301 U. S. 292, 57 S. Ct. 724, 81 L. Ed. 1093; Federal Power Commission v. Hope Natural Gas Company, 320 U. S. 591, 64 S. Ct. 281, 88 L. Ed. 333. The recent Massachusetts case of Lowell Gas Company v. Department of Public Utilities, 324 Mass. 80, 84 N. E. 2d 811, furnishes an interesting discussion of the power of a court under a statute limiting the court's jurisdiction in equity to review, modify, amend or annul any ruling or order of the department only to the extent of the unlawfulness of such ruling or order.

It must be borne in mind at the outset that we are dealing with an appeal from an administrative and quasi-legislative body. The statutes authorizing the appeal from its rulings are materially different from those authorizing appeals from the rulings of other administrative or quasi-judicial agencies. For example, a finding of fact by the Workmen's Compensation Board must be approved if there is any evidence of substance to support it. In the case before us, it is only necessary that the complaining party show by clear and convincing proof that the ruling toward which complaint is directed is either unlawful or unreasonable.

At this point it may be well to discuss briefly the

telephone situation in Lexington and other cities served by the Company. In the Fall of 1947 there were many complaints that the Company was rendering very poor service. In 1945 it sought and gained Commission approval to convert its system from manual to dial operation. The Company sought also an increased schedule of rates to be inaugurated when the conversion was effected but the Commission very properly took the position that the question of rates after the conversion should be considered if and when the conversion was made. Work on the conversion program was started in due time, but as in all other construction work during recent years, numerous delays were incurred. It appears now that the conversion will be made within the immediate future. All parties agree that the operation of a telephone system after conversion to dial operation presents a vastly different situation to one existing under manual operation. The costs of conversion are very high, and during a conversion period a telephone company usually operates at a loss. Experience shows, however, that after conversion, increased revenues and decreased expenses are usually experienced. There seems to have been little doubt in the minds of the parties to this action but that the Commission would be called upon to make certain adjustments after the system was converted. In fact, the Commission's own order showed clearly that the question of conversion was ever looming in the background. Probably this was inescapable, but the question was not what the rates should be after conversion but rather, Was the Company entitled to any rate relief between November 1, 1947, and the time conversion was to become effective? Much is said of an emergency or temporary rate. Actually that was the question which the Commission had before it because every one knew, or felt, that the rate structure would have to be reviewed by the Commission again when the dial system was put into operation.

The Company took the position that it was unnecessary to introduce figures on reproduction cost new of its plant in view of the showing made by it in support of its claim for increased rates. Certainly no one could doubt that reproduction costs today, or last year, or the year before, would far exceed original cost figures less depreciation. A similar situation was presented in

the case of Board of Sup'rs of Arlington County v. Commonwealth ex rel. Chesapeake & Potomac Telephone Company, 186 Va. 963, 45 S. E. 2d 145, wherein a rate increase was allowed on a showing of original cost figures less depreciation. It was pointed out that any reasonable figure of the present fair value of the Company's plant and property would be higher than original cost less depreciation.

The Company acquired its plant in 1929. Questions relating to the history and development of the Company were before the Commission in cases 1143 and 1298. At that time there occurred what the appellees called an arbitrary write-up, and what the Company called an adjustment in its books. We do not deem it necessary at this time to determine the justification, if any, for that action, but mention it merely as an important fact preceding certain actions of the Commission. In 1942 the Commission instigated an original cost study of the properties of the Company. In 1946 it entered an order in case 1298 approving the Company's records. The records at that time still contained, as do the books today, the adjustment figure representing the difference between the cost of the properties to the Company and their original cost as determined by the Commission's investigation, which had been brought down to June 30, 1945. The original cost figure found by the Commission approximated $2,800,000. The Company's testimony in this case showed that this figure had been increased to approximately $3,400,000 by the last of October 1947. The amount of the disputed write-up in this case approximates three quarters of a million dollars.

KRS 278.300 requires the Commission's approval for the issuance or assumption of any securities or evidence of indebtedness by a utility company with the exception of notes payable within two years. This section further provides that the Commission shall withhold its approval of such issuance or assumption until an investigation discloses the necessity and propriety of the purpose for which the proceeds thereof are to be used. At various times the commission had been called upon to approve certain phases of the Company's capital structure except an item of $300,000 due banks and an item of $1,000,000 to affiliated companies. It may be

noted that no question was raised by the appellees as to either of these items. The Company introduced evidence showing outstanding securities totaling $4,550,-000, which required an estimated $195,534 for interest and dividends. The net operating income as finally computed by the Commission was $185,711, an amount insufficient to service the Company's financial obligations, without reference to any sum required for admittedly needed extensions and improvements of the Company's service. Of course, rates cannot be based on capital structure alone, but certainly the Commission was not warranted under the facts presented in this case to disregard completely that structure.

The Company made a prima facie showing of a situation where relief was necessary if its financial integrity was to be preserved, or perhaps, in the instant case, recouped. A prima facie demonstration of the necessity for at least temporary relief having been made, the burden was then on the appellees to introduce evidence to refute that presumption. The Company had a right to ask that its financial integrity be maintained. An interesting discussion of this question may be found in the Hope Gas case cited above. In the annotation to the case of Alabama Public Service Company v. Mobile Gas Company, 213 Ala. 50, 104 So. 538, 41 A. L. R. 872, there is a discussion of the conclusiveness of a public service commission's decision or order relating to the issuance of securities by public utilities. See page 922.

Appellees introduced evidence in their effort to establish a rate base materially lower than the figures upon which the Company sought to justify the increased rates. Without comparing the figures of the Company and those submitted by the appellees item by item, it is sufficient to say that aside from the controversial write-up item mentioned above the chief differences were: (1) whether certain costs of conversion to a dial system were included in the amount listed for proposed construction (which amounted to approximately $700,000); (2) whether interest was being received on the amount listed for construction in progress; (3) whether such construction was attributable to the conversion program; (4) whether supplies relative to conversion were included in supplies on hand (the Company claimed $552,360, but the Commission allowed only $200,000 for

this item); and (5) whether the great increase in supplies was due to the increased demand on telephone companies in the post-war era. The appellees proceeded on the theory that these figures were attributable largely to the conversion program because of their large amounts, while the Company contended vigorously that all conversion costs were kept separately and were not included in the figures offered in support of the increased rates.

The Commission in the exercise of its administrative and quasi-legislative powers had the power, the facilities and the duty to ascertain the validity of its doubts respecting the financial aspects of the conversion program. This it did not do, as shown by its own order. The Commission found a rate base of approximately $2,500,000, which was based upon depreciated original cost of plant, plus materials and supplies. In support of this figure, the Commission said: ''The Commission does not commit itself to the correctness of this rate base; but it is of the opinion that as of October 31, 1947, it is the largest amount tenable under the evidence in this case.''

We think the Company made a prima facie showing in support of its case and that it was entitled to some measure of relief in the way of increased rates. We think further that the Commission acted arbitrarily and in an unreasonable manner when it denied the Company the relief sought on the ground that it had not introduced evidence to support its contentions. The evidence offered by the appellees in opposition to the showing made by the Company was insufficient to sustain the rate base found by the Commission. As a matter of fact, there has been no change in the Company's rates since 1930 save for a substantial reduction made by the Commission in 1936. It is common knowledge that telephone rates, like almost everything else, have been increased throughout the nation during the current period of high prices. In fact, we know of no recent instance where, upon a final determination of the question, a telephone company has been denied an increase in its rates. We fail to see how this Company, which admittedly is in dire financial straits, could have been expected to weather the storm without some measure of relief.

We think the case should be remanded to the Commission for further consideration on the question of rates to be charged after November 21, 1947. The major aspects of the financial phases of the conversion program are now history. It should be a relatively simple matter for the Commission to ascertain what items should or should not have been charged to those accounts. The case strikes us as being one aptly appropriate for the conference table. Of course, the case as presented to us did not involve a question of reasonable rates after the system was converted to dial operation, but all parties seem to agree that that question must of necessity soon come before the Commission.

Judgment reversed with directions to set it aside and with directions for the case to be remanded to the Public Service Commission for further consideration.