**AMERICAN DISTRICT TELEGRAPH COMPANY and F–M Corporation d/b/a Foell-McGee Alarm Company, Appellants,**

v.

**UTILITY REGULATORY COMMISSION (Statutory Successor to the Public Service Commission of Kentucky), South Central Bell Telephone Company, City of Louisville, and Honorable Steven Beshear, Attorney General, Appellees.**

Court of Appeals of Kentucky.

July 31, 1981.

Rand E. Kruger, Louisville, for appellants.

Lively M. Wilson, David C. Brown, Stites, McElwain & Fowler, Louisville, for appellee South Central Bell.

William M. Sawyer, Gen. Counsel, Utility Regulatory Comm., Frankfort, for appellee Utility Regulatory Commission.

Laurence Zielke, Asst. Director of Law, City of Louisville, Louisville, for appellee City of Louisville.

Hanson Williams, Asst. Atty. Gen., Consumer Protection Division, Frankfort, for appellee Beshear.

Before HOWARD, HOWERTON, and WILHOIT, JJ.

HOWERTON, Judge.

ADT Company and F-M Corporation appeal from a judgment of the Franklin Circuit Court affirming the decision of the Public Service Commission overruling their

motion to dismiss South Central Bell's application for an increase in intrastate rates and charges. On October 6, 1976, South Central Bell sought authority to increase its intrastate telephone rates. ADT Company and F-M Corporation are engaged in businesses of providing alarm and security systems which utilize the services of Bell. They objected to the increases and moved for their dismissal on the grounds that Bell had embarked on sizable construction projects without first applying for and receiving from the Public Service Commission a certificate of public convenience and necessity. The costs of these projects were to be considered in determining an appropriate rate increase.

On this appeal, the appellants present the following arguments.

1. Bell increased its net investment in violation of statutes and administrative regulations, and therefore, the circuit court and the commission were arbitrary and in error in their decision that the rates and charges granted Bell were fair, just, and reasonable.

2. The circuit court failed to properly address the issues and evidence relative to certificates of public convenience and necessity, and erroneously concluded that the commission had made findings supported by the record when, in fact, no such findings were made, and no such evidence exists in the record.

KRS 278.040 empowered the Public Service Commission to enforce laws relating to utilities and to prescribe rules and regulations for the conduct of its business. KRS 278.030 applies to the establishment of rates for utilities. Chapter 278 was amended in 1978 when the Energy and Utility Regulatory Commissions were established to replace the Public Service Commission, but most changes were primarily to accommodate the new system and titles. KRS 278.020(1) pertains to certificates of convenience and necessity, and the relevant portion of that statute in effect in 1976 reads as follows:

No person shall begin the construction of any plant, equipment, property or facility for furnishing to the public any of the services enumerated in KRS 278.010, except ordinary extensions of existing systems in the usual course of business, until such person has obtained from the Public Service Commission a certificate that public convenience and necessity require such construction. (Emphasis added.)

807 KAR 1:010, § 8(3), provides in relevant part:

No certificate of public convenience and necessity will be required for extensions that do not create wasteful duplication of plant, equipment, property or facilities ... and that do not involve sufficient capital outlay to materially affect the existing financial condition of the utility involved, or will not result in increased charges to the customers.

One of the primary issues is whether Bell's construction projects were "ordinary extensions of existing systems in the usual course of business." ADT Company and F-M Corporation argue that the certificates were necessary, that they were never obtained, and that the issue was properly presented to the Commission for its consideration during the rate hearing. Bell and the Commission argue that the certificate was not necessary and that it would not be proper to raise the question in a rate case. They contend that comparing KRS 278.030 regarding rate making and KRS 278.020 on issuing certificates of convenience and necessity is analogous to comparing apples to oranges.

ADT and F-M point out that new construction which materially affects a utility's rate base is particularly germane to a proceeding in which that rate base is being determined. A utility is entitled to higher rates if its net investment increases. They assert that the public cannot be protected from being overcharged for overcapacity where a utility may increase its rates by merely spending money on unnecessary additions to its plant. The appellants point to testimony by Bell employees which indicates that in an eight-year period, Bell spent just short of $1,000,000,000.00 on new construction without obtaining one certificate. This included the four years prior to the test year and the three years following.

As of the end of the test year used by Bell, its total intrastate investment for the five years had been $511,000,000.00. In other words, Bell spent in that period for new construction in Kentucky an amount approximately equal to its total intrastate net investment accumulated in this century. Over the following three years, Bell spent a similar amount, constituting an expenditure of 200 percent of the net investment in eight years. The appellants argue that such an expenditure cannot be considered "ordinary" or in the "usual course of business" as contemplated by KRS 278.020.

The Commission has adopted for administrative expediency a "10 percent" rule of thumb for requiring the certificates. The Commission presumes that a new construction project of less than 10 percent of the net investment of the utility would not "materially alter the existing financial condition of the utility" or "result in increased charges." By applying the 10 percent rule, Bell could now circumvent the statute and regulation on any single project of less than $100,000,000.00, assuming a net value of approximately $1,000,000,000.00. The appellants therefore argue that the applicable regulation should apply to state-wide implementation of modernization projects and construction projects and not to their incremental parts which alone would not have the magnitude to substantially affect the business.

ADT and F-M insist that the testimony of Bell's chief accountant, W. J. Lester, admitted that the total new construction expenditures involved sufficient capital outlay to materially affect Bell's existing financial condition. They therefore contend that by Bell's own witnesses, the required "cause and effect" has been established. It is also a fact, however, that if each individual project for extension or improvement throughout the State is considered separately, then the expenditure would not violate the 10 percent rule, even assuming that the rule is valid and equitable.

The testimony presented by Bell established that substantial sums are required to maintain and upgrade telephone service.

For the one year involved in this action, the company spent approximately $160,000,-000.00 for maintenance and improvements in the system. The total clearly exceeded the 10% rule, but the Commission has thus far applied the certificate requirement to individual construction projects rather than to cumulative programs. The reason given by the Commission at the hearing for its policy was stated:

> This commission has adopted the policy and the theory in the hope that these projects can be expanded and money expended for the purpose of giving service to the people of Kentucky who want it as cheaply as possible, and we think our policy is a sound one and until shown different, we will stay with that policy.

Each year, utilities, including the South Central Bell Telephone Company, develop construction programs composed of thousands of projects that maintain, add to, and modernize service within their prescribed areas. The appellants had been given detailed lists of every construction project of South Central Bell in Kentucky which exceeded $10,000.00. They were also furnished with a list showing every construction project in progress on December 31, 1976, and every project undertaken and completed during the test year. When the Commission inquired of the appellants if there was a particular project which they objected to as requiring a certificate of convenience and necessity, they answered in the negative. The Commission therefore overruled the appellants' motion to dismiss the rate request, and it primarily is for this reason that we affirm the judgment in this action.

The Commission was of the opinion that the demand for new and improved telephone service had been great, and that it would continue to be so in the future. Thus, some consideration was warranted concerning the increased costs necessary to finance the demand for "modern and efficient telephone service to Kentucky customers." The Commission ordered Bell to continue to extend service to unserved customers in its service area and to upgrade its

service toward the total elimination of eight-party service as soon as practicable.

Except as the foregoing comments might pertain to the need for certificates of convenience and necessity, the Commission made no further findings on the matter. We therefore fail to see from the record how the trial court concluded:

> That there is ample support for the commission's finding that Bell's construction and extensions were made in the usual course of business within its previously certificated service area, and hence required no further consideration and would in any event be improper to consider in a rate proceeding.

It may be, however, that any thorough consideration of a need for a certificate of convenience and necessity would be inappropriate in a rate hearing.

Indeed, that is the position of the Commission and Bell. The Commission argues that in order to dispose of all of the cases it is faced with annually, the parties must present only issues that are required by the nature of the proceeding. The issue of whether a particular construction project initiated during the test year was or was not an extension "in the ordinary course of business," cannot be properly addressed by the same commission that is grappling with such issues as proper return on equity, rate design, and so forth. The Commission requires, and argues that it is legislatively permissible to have, separate procedures for resolving the two distinct type cases. The Commission proposes that the proper procedure for ADT and F-M would have been to initiate a complaint proceeding against Bell or to seek penalties imposed by KRS 278.-990 for the alleged violation of extending its system without obtaining a certificate as required by KRS 278.020. ADT and F-M are quick to point out the likely futility of such a procedure, however. They argue that unless Bell made an application for a certificate, or unless Bell applied for a rate increase, they would never know what Bell was doing, or certainly not know of its overall plans and projects.

Rate hearings and hearings for certificates of convenience and necessity are each very complicated proceedings. To mix the two could present obvious problems for resolving either case. If, however, a specific challenge to any project or group of projects, other than to the annual program, had been made by the appellants, it might have been reasonable for the Commission to have considered either the question of convenience and necessity for the specific project or the propriety of including the cost of the project in the value of the business for determining the base upon which the new rates would be established. We will leave it to the legislature, however, to require the Commission to consider groups of projects instead of individual projects when seeking a certificate of convenience and necessity.

The appellants have made a strong case factually, and they have raised some serious points for concern and consideration. They must not be taken lightly by this Court, the Commission, or the legislature. We seek to avoid rule making or legislating, at least when the statutes are not unconstitutional and the Commission has not usurped the authority granted by the statute to establish its own rules and guidelines.

In this situation, and under the existing laws and regulations, it would be more appropriate for intervenors such as ADT and F-M to raise questions regarding the need for a certificate of convenience and necessity by actions separate from rate hearings.

KRS 278.430 provides:

> In all trials, actions or proceedings arising under the preceding provisions of this chapter or growing out of the exercise of the authority or powers granted to the commission, the party seeking to set aside any determination, requirement, direction or order of the commission shall have the burden of proof to show by clear and satisfactory evidence that the . . . order is unreasonable or unlawful.

We conclude that ADT and F-M have not shown that the order was unreasonable or unlawful by clear and satisfactory evidence.

Our scope of judicial review in administrative proceedings such as this is substantially limited. *Energy Regulatory Commission v. Kentucky Power Co.,* Ky.App., 605 S.W.2d 46 (1980), and *Lexington Telephone Co. v. Public Service Commission,* 311 Ky. 584, 224 S.W.2d 423 (1949).

The judgment is affirmed.

All concur.