OWEN COUNTY RURAL ELECTRIC
COOPERATIVE CORPORATION,
Appellant,

v.

PUBLIC SERVICE COMMISSION OF
KENTUCKY, Campbell County Fiscal
Court, Consolidated Foods Corpora-
tion, and the Union Light, Heat and
Power Company, Appellees.

Court of Appeals of Kentucky.

Jan. 4, 1985.

Discretionary Review Denied and
Opinion Ordered Published by
Supreme Court June 5, 1985.

**600**

William M. Sawyer, Frankfort, for appellee, P.S.C.

Beverly Storm, A.J. Jolly, Jolly & Blau, Newport, for appellee, Campbell Co. Fiscal Court.

Joseph J. Leary, Frankfort, for appellee, Consolidated Foods Corp.

James R. Poston, James J. Mayer, Cincinnati, Robert E. Ruberg, O'Hara, Ruberg & Taylor, Covington, for appellee, Union Light Heat & Power Co.

Robert M. Watt, III, Stoll, Keenon & Park, Lexington, for appellant.

Eugene N. Buchheit, Louisville, James M. Miller, Lizbeth Ann Tully, Holbrook, Gary, Wible & Sullivan, P.S.C., Owensboro, for amicus curiae, Ky. Assoc. of Elec. Co-op.

Before HOWERTON, MILLER and WHITE, JJ.

HOWERTON, Judge.

Owen County Rural Electric Cooperative Corporation (RECC) appeals from a judgment of the Franklin Circuit Court affirming an order of the Public Service Commission (PSC) which allowed Union Light, Heat and Power Company (ULH & P) to invade or take approximately 40 acres of the RECC's certified, but undeveloped territory. The RECC argues that the PSC and the Franklin Circuit Court improperly interpreted the certified territory statutes, KRS 278.016–278.020. It also alleges that the PSC improperly failed to follow its own precedents and that the order and judgment violated the U.S. and Kentucky Constitutions by failing to award compensation for the confiscation of its territorial rights. We determine that the PSC made adequate findings of fact which were appropriately applied to the statutes. Accordingly, we affirm the order and judgment.

The Campbell County Fiscal Court (Campbell County) initiated this action by petitioning the commission to authorize ULH & P to supply retail electric service to an industrial park consisting of approximately 77 acres and located adjacent to U.S. Highway 27 in the southern part of Campbell County. ULH & P, the RECC, and Consolidated Foods Corporation (Consolidated) were named as respondents. Consolidated was to be the first tenant in the industrial park, and it, together with ULH & P, filed a response in support of the petition. The RECC responded by pointing out that Consolidated would be in a portion of the park, which presently lies within its certified territory, and that it had the exclusive right to serve the facility.

The certified territories were established pursuant to legislation passed in 1972. KRS 278.016 reads in part that it is:

... in the public interest that, in order ... to avoid wasteful duplication of distribution facilities, to avoid unnecessary encumbering of the landscape ... to prevent the waste of materials and natural resources ... the state be divided into geographical areas, establishing the areas within which each retail electric supplier is to provide the retail electric service as provided in KRS 278.016 to 278.-020....

The boundary between ULH & P and the RECC runs through the middle of the industrial park. The certified territory of ULH & P encompasses all of parcels 1 and 2, and part of parcel 3 of the industrial park. The RECC's territory encompasses all of parcel 4 and the remainder of parcel 3. Consolidated's new facility will be located primarily in parcel 4, but its office building will be in parcel 2.

KRS 278.018(1) provides in part, "[i]n the event that a new electric-consuming facility should locate in two or more adjacent certified territories, the commission shall determine which retail electric supplier shall serve said facility based on criteria in KRS 278.017(3)." The criteria set forth in KRS 278.017(3) are:

(a) The proximity of existing distribution lines to such certified territory.

(b) Which supplier was first furnishing retail electric service, and the age of existing facilities in the area.

(c) The adequacy and dependability of existing distribution lines to provide dependable, high quality retail electric service at reasonable costs.

(d) The elimination and prevention of duplication of electric lines and facilities supplying such territory.

The PSC considered the entire industrial park to be an electric-consuming facility which could best be served by one supplier. It found that the park required three-phase electric service, and in applying criterion (a), it found that ULH & P has an existing three-phase, 13.2 KV primary service line on U.S. 27 adjacent to the western boundary of the park. The entrance to the park and its service road connect to U.S. 27. It further found that the RECC has a single-phase 7.2 KV distribution line located just beyond the eastern border of the park and intersecting with the northeast corner of parcel 4. The nearest RECC three-phase distribution line is 2.25 miles south of the park.

In considering criterion (b), the PSC found that the park was part of an 87-acre tract of land previously owned by a family named Trapp. ULH & P has supplied electric service to the Trapp family farm for many years. The RECC has never provided retail electric service to any portion of this tract of land.

Criterion (c) was analyzed in light of the park's need for three-phase electric service. ULH & P has an existing distribution line which can adequately supply the electrical needs of the park without any additional construction, except for establishing the service within the park territory. Its line is located along U.S. 27, which will facilitate its ability to repair outages. The RECC's line follows a five-mile route through hilly, wooded terrain. The approval of ULH & P to service the industrial park clearly meets KRS 278.017(3)(d) in that it eliminates and prevents the duplication of electric lines and facilities supplying the territory.

The Franklin Circuit Court affirmed the ruling of the PSC and held that what is necessary for the public's convenience remains the bedrock on which all utility regulation in Kentucky is founded. It further concluded that the PSC had complied with the statute and that its ruling attempted to avoid wasteful duplication, the disturbance of the landscape, and the waste of materials and natural resources.

The RECC first argues that the PSC and the Franklin Circuit Court improperly interpreted the certified territory statutes. The basis for this allegation is that the PSC interpreted the meaning of a new electric-consuming facility to encompass the entire industrial park. KRS 278.010(8) provides,

" 'Electric-consuming facilities' means everything that utilizes electric energy from a central station source."

■ The definition does not limit a facility to being a building. The definition is broad enough for the PSC to reasonably interpret it to mean the entire industrial park, which will be served from the central station source. The plot plan of the industrial park reveals that ULH & P is to establish its service entrance, metering and transforming equipment for the park on parcel number 2 approximately 1000 feet from the park entrance on U.S. Highway 27.

The RECC cites cases from other jurisdictions, which generally limit the territorial considerations to serving individual buildings. We find none of the cases to be dispositive of this situation, either on their facts or the statutes applicable to the various states. No Kentucky court has yet ruled on the application of the Kentucky statutes, and especially in a comparable fact situation.

■ We are concerned with what can be an electric-consuming facility, rather than merely who may be a consumer, as urged by the RECC. We conclude that the PSC appropriately determined that the entire park could be classified as an electric-consuming facility, even though the park operator or developer may purchase and consume very little electricity and be only one of several actual consumers within the park.

■ After determining that KRS 278.018 was applicable, the PSC correctly applied the facts in this case to the criteria set out in KRS 278.017(3). The decision to modify the boundary line and include the park in the territory of ULH & P avoided duplication, and it conserved resources and materials, as well as site space within the park. The lines will be located on the right-of-way adjacent to the service road, which is the only road going to Consolidated's facility on parcel 4 or to any of the areas within the park. The equipment is also to be located adjacent to the service road, and no

other lines and facilities for high-voltage transmission need be established over the industrial sites. The PSC has fulfilled the intent of the statutes in resolving this case.

■ The RECC next claims that the PSC's interpretation of the certified territorial statutes is contrary to its previous rulings. In support of this argument, it cites *Berea College Electric Department v. Bluegrass Rural Electric Cooperative Corp.*, PSC Case No. 5773, and *Jellico Electric System v. Cumberland Valley Rural Electric Cooperative Corp.*, PSC Case No. 6637. It also cites *Secretary of Agriculture v. U.S.*, 347 U.S. 645, 74 S.Ct. 826, 98 L.Ed. 1015 (1954), and *Ohio Fast Freight, Inc. v. U.S.*, 574 F.2d 319 (6th Cir.1978), for the proposition that an administrative agency may not depart from its prior norms without giving reasons. The RECC argues that this case involves an extreme departure from the precedents of the prior cases and that the PSC gave no explanation.

The *Jellico* case is not proper for citing, CR 76.28(4)(c), and the *Berea College* case is distinguishable. It did not require an application of KRS 278.017 and 278.018. The *Berea College* case merely held that a customer may not choose its electrical supplier by a unilateral placement of a meter.

■ The RECC finally argues that the order of the PSC and the circuit court violated its constitutional rights by confiscating a valuable property right without just compensation. The RECC did establish that its territorial rights are valuable, but we decline to require an award of compensation for two reasons. First of all, the RECC had never developed anything in the territory and had made no investment. ULH & P is taking no equipment or current income from the RECC. If it was taking either of those items, it would have to pay for them. The second and primary reason that no compensation is due is that KRS 278.018 provides an exception for modifying territorial boundaries. The PSC acted within the statutory procedures and criteria. The PSC established the original

line as it was required to do, and it properly modified the boundary before the RECC made any investment in the territory. No compensable property or property rights were taken in this instance.

■ We acknowledge the filing of a brief by the amicus curiae, Kentucky Association of Electric Cooperatives, in support of the RECC's position. In addition to reiterating the RECC's arguments, the KAEC brief primarily argues that the prevention of duplication of facilities is not a major goal of the certified territorial statutes. It contends that the PSC and the Franklin Circuit Court relied too heavily on this factor. The KAEC also argues that territorial lines should not be changeable in order to minimize disputes. While some disputes may be minimized by an inflexible application of the statutes, other disputes will surely arise. Furthermore, there are several goals of the statute, and we find no error in those considered by the PSC. The statute's reference to minimizing disputes does not anticipate that disputes will be totally eliminated by any interpretation or application of the statutes.

■ The PSC is the trier of fact, and our court's scope of review is limited. *American District Telephone Co. v. Utility Regulatory Commission*, Ky.App., 619 S.W.2d 504 (1981). We find no clear error in any of the findings by the commission, and we concur with the applications it made of the statutes.

The judgment of the Franklin Circuit Court affirming the order of the Public Service Commission is affirmed.

All concur.